UNITED STATES of America, Appellee,

v.

### Robert EAGLE ELK, Jr., a/k/a Bobby Bear, Appellant.

#### No. 81–2425.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 28, 1983.

Decided June 20, 1983.

Before ROSS, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

PER CURIAM.

Appellant, Robert Eagle Elk, Jr., was tried before a jury for voluntary manslaughter under 18 U.S.C. §§ 1153 and 1112 (1976), and convicted on the lesser-included offense of involuntary manslaughter. On appeal, this court reversed the conviction and remanded for a new trial on the grounds that the trial court had erred in admitting an inculpatory statement made by Eagle Elk during post-polygraph interrogation.[1] That decision was based on this court's prior holding in *Fields v. Wyrick,* 682 F.2d 154 (8th Cir.), *rev'd per curiam,* —— U.S. ——, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). Subsequently, the Supreme Court reversed this court's decision in *Fields,*[2] and vacated and remanded the

present case for further consideration in light of *Wyrick v. Fields,* —— U.S. ——, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982).[3] Having once again fully considered the issues raised on this appeal in light of these recent case developments, we affirm appellant's conviction.

Briefly, the facts giving rise to appellant's conviction and the present appeal are as follows:[4] On April 25, 1981, Eagle Elk, Richard Schreiner and Anthony Jacobs were traveling together in Eagle Elk's automobile. During an altercation among the individuals Schreiner was struck several times in the head with the butt of a rifle and subsequently died. On April 28, 1981, Eagle Elk was arrested in connection with Schreiner's death and sometime thereafter, upon the advice of counsel, Eagle Elk volunteered to undergo a polygraph examination. On July 23, 1981, Eagle Elk, accompanied by his counsel,[5] went to the Federal Bureau of Investigation office in Rapid City, South Dakota, for the polygraph. The examination was conducted by FBI Agent Diem. Prior to undergoing the polygraph, Eagle Elk was advised of his constitutional rights,[6] and signed a form stating that he understood those rights and was waiving those rights at that time. In addition, Eagle Elk signed a polygraph interview consent form which advised him that he could refuse to take the test, could stop the test at anytime and could refuse to answer any individual question.

After the polygraph examination was completed, Agent Diem advised Eagle Elk that the test indicated he was not telling the truth, and Diem continued questioning

1. *United States v. Eagle Elk,* 682 F.2d 168 (8th Cir.1982), *vacated,* —— U.S. ——, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983) (Memorandum).

2. *Wyrick v. Fields,* —— U.S. ——, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982).

3. *United States v. Eagle Elk,* —— U.S. ——, 103 S.Ct. 810, 74 L.Ed.2d 1010 (1983) (Memorandum).

4. For a more detailed discussion of facts see this court's prior opinion in *United States v. Eagle Elk, supra,* 682 F.2d at 168–69.

5. Although Eagle Elk's counsel accompanied him to the polygraph examination site, his counsel was not present while the examination was being conducted.

6. The advice of rights and waiver form informed appellant, *inter alia,* that he had a right to remain silent, to have a lawyer present during questioning, and to stop answering questions at any time and speak to his lawyer.

Eagle Elk without again advising him of his constitutional rights. During this interrogation Eagle Elk made an incriminating statement to the effect that he had struck Schreiner twice in the head with the rifle. At some point during the interrogation Eagle Elk requested to see his attorney. Appellant's pretrial motion to suppress this statement as not being voluntary was denied and the statement was eventually admitted at trial.

Following the precedent established in *Fields v. Wyrick, supra,* we originally held that Eagle Elk's incriminating statement was not voluntarily made in that he did not knowingly and intelligently waive his fifth amendment right to have counsel present at post-polygraph examination interrogation. *See United States v. Eagle Elk, supra,* 682 F.2d at 170. The Supreme Court, in reversing this court in *Fields,* held only that Fields' fifth amendment right to have counsel present during a custodial interrogation was not violated, but the Court apparently left open the question of whether the post-polygraph interrogation violated petitioner's sixth amendment right to counsel. *See Wyrick v. Fields, supra,* 103 S.Ct. at 397; *id.* at 400 (Marshall, J., dissenting). Consequently, this court granted petitioner Fields' request to consider that question on remand, and held that Fields had validly waived his sixth amendment right to have counsel present at the post-polygraph interrogation, and therefore, his incriminating statement obtained as a result of that interrogation was properly admitted at his trial. *Fields v. Wyrick,* 706 F.2d 879, 880 (8th Cir.1983) (on remand).

■■■ On February 24, 1983, we directed the parties in the instant case to brief the sixth amendment issue concerning the admissibility of appellant Eagle Elk's inculpatory statement made during post-polygraph test interrogation conducted in absence of his counsel. Our examination of the relevant case leads us to conclude that the appropriate standard for reviewing the validity of a waiver of the sixth amendment right to have counsel present at an interrogation [7] is essentially the same standard applied to waivers of the fifth amendment right to counsel where the right to counsel has been previously invoked. *See Fields v. Wyrick, supra,* at 880 (on remand). *Compare Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981) *and Wyrick v. Fields, supra,* 103 S.Ct. at 396 (fifth amendment) *with Brewer v. Williams,* 430 U.S. 387, 403–04, 97 S.Ct. 1232, 1241, 1242, 51 L.Ed.2d 424 (1977) (sixth amendment). That is, the government has the "heavy" burden [8] of proving that under the particular facts and circumstances of the case, the waiver was an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a known right or privilege. *See Edwards v. Arizona, supra,* 451 U.S. at 482, 101 S.Ct. at 1883–84, *Brewer v. Williams, supra,* 430 U.S. at 404, 97 S.Ct. at 1242. "[C]ourts indulge in every reasonable presumption against waiver," and evidence that an individual has been informed of and appears to understand the right to counsel is not sufficient—"waiver requires not merely comprehension but relinquishment." *Id.* at 404, 97 S.Ct. at 1242.

In *Wyrick v. Fields, supra,* the Supreme Court stated:

> By requesting a polygraph examination, [the defendant] initiated interrogation. That is, Fields waived not only his right to be free of contact with the authorities in the absence of an attorney, but also his right to be free of interrogation about the crime of which he was suspected.

---

7. Because Eagle Elk had been indicted and arraigned prior to July 23, 1981, when the polygraph test was administered, there is no question that his sixth amendment right to counsel had attached at the time of the interrogation. *See, e.g., Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977); *Kirby v. Illinois,* 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972).

8. *See Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); *McCree v. Housewright,* 689 F.2d 797, 802 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1782, 76 L.Ed.2d 352 (1983).

Fields validly waived his right to have counsel present at "post-test" questioning, unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a "knowing and intelligent relinquishment or abandonment" of his rights.

103 S.Ct. at 396 (citation omitted; emphasis added). In concluding that Fields was continuing to make a "knowing and intelligent relinquishment" of his right to counsel during the post-test questioning, the Court rejected the contentions that (1) merely disconnecting the polygraph equipment was a significant change in the character of the interrogation, and (2) Fields and his counsel could have reasonably anticipated that questions would not be asked after the examination. The Court noted that Fields had been informed prior to the test that he could stop the questioning and request his lawyer to join him at any time, and stated that "[m]erely disconnecting the polygraph equipment could not remove this knowledge from Fields' mind." *Id.* (footnote omitted).

 After thorough reconsideration of the validity of Eagle Elk's waiver of the right to counsel and the admissibility of his inculpatory statement in light of the Supreme Court's decision in *Wyrick v. Fields, supra,* and this court's subsequent decision in *Fields v. Wyrick, supra,* we are still "unable to distinguish the relevant factual circumstances presented by the instant case from those in *Fields.*" *United States v. Eagle Elk, supra,* 682 F.2d at 170. Like Fields, appellant Eagle Elk, by requesting

the polygraph examination, initiated the interrogation. *See Wyrick v. Fields, supra,* 103 S.Ct. at 396; *Fields v. Wyrick, supra,* at 881 (on remand). Moreover, as in *Fields,* the waiver of rights forms executed by Eagle Elk in this case prior to the polygraph examination generally informed Eagle Elk that he had the right to have an attorney present during questioning, and that even if he answered questions without a lawyer present he could still stop answering at any time and speak to a lawyer before answering further.[9] It is clear from the record that Eagle Elk fully understood and expressly waived these rights prior to the polygraph examination. In these particular circumstances, we must conclude that appellant Eagle Elk voluntarily, intelligently, knowingly and intentionally relinquished both his fifth and sixth amendment rights to have counsel present at the post-test interrogation. *See Fields v. Wyrick, supra,* at 881 (on remand). Therefore, on the basis of the Supreme Court's decision in *Wyrick v. Fields, supra,* and this court's subsequent decision in *Fields v. Wyrick, supra,* we hold that Eagle Elk's inculpatory statement was voluntarily made and was properly admitted at trial.

Appellant also raises several other challenges to his conviction relating to the rulings made by the district court during the proceedings below, including assertions that the court erred in failing to provide him with a transcript of the suppression hearing at government expense and erred in denying his request for funds to hire a particular

9. Unlike Fields, it is undisputed that Eagle Elk at some point during the post-polygraph questioning requested his counsel. Agent Diem testified at the suppression hearing that he was sure the request came after the appellant made the incriminating statement. Appellant contended that the request came before he made the statement, and argued that his statement must be suppressed under the Supreme Court's decision in *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981) (interrogation must cease when accused requests counsel). The district court, which heard the testimony at the suppression hearing, reviewed all the circumstances of this case and was in the best position to judge the credibility of the witnesses, explicitly held that

Eagle Elk did not request the presence of his counsel prior to giving the inculpatory statement. In our original opinion in this case we noted that such findings of fact by the district court are subject to the clearly erroneous rule, and we held that on the basis of the record we could not find that the district court's determination was clearly erroneous. *United States v. Eagle Elk, supra,* 682 F.2d at 169. *See, e.g., McCree v. Housewright, supra,* 689 F.2d at 800; *United States v. Poitra,* 661 F.2d 98, 98 (8th Cir.1981); *United States v. Doby,* 598 F.2d 1137, 1140 (8th Cir.1979). Upon another review of the record we are still convinced that the district court was not clearly erroneous in its factual conclusion concerning the timing of appellant's request for counsel.

expert witness. After thorough consideration of all of the appellant's other challenges, we cannot conclude that the district court committed reversible error in the present case. Accordingly, we affirm the appellant's conviction for involuntary manslaughter.