**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Samuel Charles GILLYARD,**
**Defendant-Appellee.**

**No. 83–5109.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1983.

Decided Feb. 28, 1984.

Duane Deskins, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Randy Sue Pollock, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellee.

Before SKOPIL, FERGUSON and CAN-BY, Circuit Judges.

FERGUSON, Circuit Judge:

The government appeals an order of the district court suppressing the post-polygraph confession of the defendant. The district court concluded the defendant's confession was the result of an invalid waiver of his *Miranda* rights in violation of the Fifth Amendment's Due Process Clause, and, also, was obtained in violation of the defendant's Sixth Amendment right to counsel. The government has taken an interlocutory appeal, pursuant to 18 U.S.C. § 3731.

The parties now agree that since adversarial judicial proceedings had not been commenced against the defendant, the defendant's Sixth Amendment rights had not attached. *United States v. Zazzara*, 626 F.2d 135, 138 (9th Cir.1980). We hold, however, that the record sustains the finding of the district court that the defendant had not waived his *Miranda* rights and we therefore affirm.

## FACTS

On January 10, 1983, a grand jury subpoena for fingerprints, palmprints and handwriting exemplars was served on Gillyard, a postal employee, by two postal inspectors in connection with an investigation into a scheme to cash forged checks stolen from the mail. At the time of service the agents questioned the defendant and he denied his involvement in the alleged offense. The agents proposed that he take a polygraph test to clear his name of suspicion and he agreed.

About a month later, postal inspectors went to the West Branch Post Office in Los Angeles, where Gillyard was employed as a postal carrier. After introducing themselves, the postal inspectors asked the defendant whether he was still agreeable to taking the polygraph test at their office, and he said he was. Although Gillyard wanted to drive his own automobile to the polygraph test site, the postal inspectors asked him to ride with them, and promised to return him to the West Branch Post Office before his normal departure time. The defendant agreed to ride with the postal inspectors to their office at the Terminal Annex Building in Los Angeles. At no time was the defendant arrested.

Upon arriving at the Terminal Annex Building, at 10:20 a.m. on February 17, 1983, defendant Gillyard was directed to the polygraph room where he was introduced to the polygraph examiner, Scott Barry. Prior to any questions, the polygraph examiner read Gillyard his *Miranda* rights from a standard form used by the Postal Service. Then, the defendant was presented with the form on which he acknowledged, in writing, that he understood his rights and waived them.[1] The defendant was asked if he understood his rights and if he was forced to come in to take the polygraph test. The defendant said no—that he volunteered to take the test. Thereafter, the polygraph examiner presented and read aloud to the defendant the "Agreement to Take a Polygraph Examination," which indicated the polygraph test was voluntary and given without threat, promise of reward or immu-

---

[1] WARNING

BEFORE YOU ARE ASKED ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS.
- You have a right to remain silent.
- Anything you say can be used against you in court.
- You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
- If you decide to answer questions now without a lawyer present, you will still

have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

 WAIVER

I am willing to discuss subjects presented and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

nity.[2] The defendant indicated he understood and signed the form, and the examiner began the polygraph test.

Based on the results of the polygraph test, the examiner told Gillyard that he was being deceptive about his involvement in embezzling checks from the mail. The examiner initiated a brief post-polygraph interview with Gillyard. During the interview, the examiner indicated to Gillyard that any truthful information he provided would be helpful and would be made known to the United States Attorney's office. However, the defendant, who remained calm, continued to deny any criminal involvement. After approximately thirty minutes, the examiner left the polygraph room. Postal inspectors Christine Birdsall and Michael Kletter then entered the room and questioned the defendant for approximately one hour. The agents did not advise the defendant of his *Miranda* rights. They did not tell him that he could refuse to talk to them or that he was free to leave. The two postal inspectors reminded the defendant that he had failed the polygraph test, and, now, should tell the truth. During questioning by the agents the defendant continued to deny his involvement. The defendant did not ask to leave, for a lawyer, or to discontinue the questioning, nor was he arrested or physically restrained in any manner. Finally, after about two and a half hours, the defendant orally confessed and signed a written confession admitting his involvement in embezzling checks from the mail.

Thereafter, the defendant fell asleep for a short period. After corroborating the information provided in the defendant's confession, the postal inspectors returned the defendant to the West Branch Post Office at 3:30 p.m., which was the defendant's usual quitting time. About one month later, on March 18, 1983, the defendant was indicted on one count of conspiracy and three counts of embezzlement of mail in violation of 18 U.S.C. §§ 371 and 1709.

Prior to trial, the district court conducted an evidentiary hearing on Gillyard's motion to suppress his confession. In his motion to suppress, Gillyard claimed his confession was involuntary and made without an understanding of the consequences to him. The court heard testimony from government witnesses and from Gillyard, who related the circumstances surrounding the interrogation and its emotional effect on him. At the conclusion of the testimony, the district court indicated that the major problem in the government's case was that the inspectors obtained the waiver of Gillyard's rights by telling him that he would only be subjected to a polygraph test. The failure of the postal inspectors to re-advise Gillyard of his *Miranda* rights after the polygraph test ended and before the direct questioning began raised a serious question under *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). The government argued that the Supreme Court's opinion in *Wyrick v. Fields* did not require a separate *Miranda* warning before the agents began their questioning of the defendant after the polygraph examination.

At the conclusion of the hearing the district court suppressed the defendant's confession. With regard to the Fifth Amendment Due Process issue, which is the only matter involved in this appeal, the district court found under the totality of the circumstances that the defendant did not make a voluntary, knowing and intelligent waiver of his *Miranda* rights.

## DISCUSSION

 The Fifth Amendment right to counsel first arises when an individual is held for custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Whether a person is 'in custody or otherwise deprived of his

2. I, Sam Gillyard, make the following statement freely and voluntarily. No threats, promises or reward, or duress of any nature have been used in obtaining this statement from me. I know I do not have to make any statements and that anything I do say can be used against me in a court of law. I also know that I am entitled to have an attorney represent and counsel with me at this time and that if I cannot afford an attorney, one will be appointed for me.

freedom of action in any significant way,' *Miranda v. Arizona, [supra,]* is answered by a review of the totality of facts involved at the time of the alleged restraint." *United States v. Booth,* 669 F.2d 1231, 1235 (9th Cir.1981). A suspect is in custody and entitled to *Miranda* warnings, if under the circumstances a reasonable person would believe that he is not free to leave. *United States v. Leyva,* 659 F.2d 118, 120 (9th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). We will uphold the district court's finding that Gillyard was in fact in custody unless it is clearly erroneous. *United States v. Booth,* 669 F.2d at 1235.

It would serve no purpose to again recite the facts which led the district court to conclude that the defendant was in custody after the post-polygraph questioning by the two postal authority agents. The case on its facts is similar to *United States v. Lee,* 699 F.2d 466 (9th Cir.1982), wherein it was held that an innocent person reasonably could conclude that he was not free to leave.

The primary issue therefore is whether as a matter of law the district court was foreclosed by *Wyrick v. Fields, supra,* from finding that the defendant did not freely and voluntarily waive his *Miranda* rights. The government argues that *Wyrick* establishes a *per se* rule that *Miranda* warnings are not required after a polygraph examination when there was a valid waiver prior to the examination. That approach is exactly what the Court in *Wyrick* condemned. *Wyrick* focused on whether or not the Eighth Circuit had misapplied *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and created an unjustified *per se* rule that defendants must always be re-advised of their *Miranda* rights before a post-polygraph interrogation commences. The Court criticized the Eighth Circuit for adopting a *per se* rule, and not examining the totality of the circumstances as *Edwards* requires.

The difference between the facts in *Wyrick* and this case is much greater than any generalized appearance of similarity. They are:

1. In *Wyrick* the defendant and his attorney requested the examination. Here the defendant consented after the agents suggested that he take one.

2. In *Wyrick* the defendant was represented by counsel. Here, he was not.

3. In *Wyrick* the statement read to the defendant included a clause much broader than the standard *Miranda* warning given in this case. There, and not here, the defendant was advised: *"If you are now going to discuss the offense under investigation, which is rape, with or without a lawyer present, you have a right to stop answering questions at any time or speak to a lawyer before answering further, even if you sign a waiver certificate."* 459 U.S. at 44, 103 S.Ct. at 395, 745 L.Ed.2d at 217. The *Wyrick* warning made it clear to the defendant that he was not merely taking a polygraph examination but was going to be asked questions about a specific offense under investigation.

4. There the postexamination questioning was done by the same person who conducted the polygraph examination after he had merely switched off the machine. Here the questioning was not done by the polygraph operator but by two officers who questioned the defendant for a considerable period of time after the operator had left the room. As found by the district court, those officers came in the room, announced that the defendant was lying, and proceeded, in the district court's words, to "go to work" to get a confession. Here the questioning was not merely a continuation of the polygraph examination but a change to accusatory questioning by two officers who had nothing to do with the polygraph examination.

■ The district court might have determined that under the totality of the circumstances the defendant had properly waived his *Miranda* rights. But the district court did not. It properly applied the totality of circumstances test repeated many times in *Wyrick,* and found no valid waiver.

Based on the record we cannot say that the district court's decision was clearly erroneous. *United States v. Lee,* 699 F.2d at 468; *United States v. Booth,* 669 F.2d at 1236. We cannot construe *Wyrick* as creating a *per se* rule that once *Miranda* warnings are given prior to a polygraph examination, such warnings need not be required for postexamination accusatory questioning, as the formulation of a *per se* rule is what *Wyrick* forbids.

AFFIRMED.