896 F.2d 546
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James Edward JONES, Petitioner-Appellant,
v.
David A. GARRAGHTY; Attorney General of the State of
Virginia, Respondents-Appellees.
 No. 89-7131.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 31, 1989.
Decided: Jan. 26, 1990.
 
 William W. Hood, III, Third-Year Law Student (Professor Harold J. Krent, Mary L. Porto, Second-Year Law Student, Post Conviction Assistance Project, University of Virginia School of Law, on brief), for appellant.
 Linwood Theodore Wells, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General; Michael F. McAuliffe, Third-year Law Student, on brief), for appellees.
 Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 James Edward Jones seeks a writ of habeas corpus, alleging that he was denied effective assistance of counsel during a state criminal prosecution in Virginia. Jones pled guilty in Virginia state court to burglary, conspiracy to commit burglary, felony murder, and use of a firearm in the commission of a felony. After a state habeas petition was denied without a hearing, Jones filed a federal habeas petition in the district court for the Western District of Virginia. Pursuant to 28 U.S.C. Sec. 636(c)(2), a magistrate held an evidentiary hearing and then denied Jones' petition. Jones now appeals the denial of his petition. We affirm.
 
 
 2
 * In July 1984, Jones confessed to involvement in a July 1983 burglary and murder in Nelson County, Virginia. Jones confessed that he and confederate William Davis agreed to break into a home where Jones believed they could obtain some marijuana. Davis broke in through a window and let Jones, who was carrying a shotgun Davis had brought with them, in through a door. Jones searched the basement while Davis, now carrying the shotgun, searched other parts of the house. When Jones heard a car coming up the driveway, he called to warn Davis and then fled into the backyard. Hiding behind a tree, Jones heard a shot from inside the house. Davis then emerged from the house with the shotgun; while the two drove away, Davis told Jones he had shot the homeowner. Jones and Davis later smoked marijuana stolen from the house.
 
 
 3
 In the months following the murder, police questioned Jones several times. One government witness testified that on July 24, 1984, Jones verbally confessed before being taken for a confirmatory polygraph test, but another witness present at the scene testified that he recalled no such statement, and the polygraph examiner testified that he was not informed of a prior confession. On July 24, Jones did agree to take a polygraph test after he was questioned at the Nelson County Sheriff's Department. He was driven by police approximately forty-five miles to Appomattox, Virginia, to take the test. Jones was given the Miranda warnings prior to the test and signed what apparently was a standard waiver form.
 
 
 4
 After the test, the examiner, a special agent of the Virginia state police, told Jones that the results showed that Jones knew about the murder and who committed it. Jones testified that he believed after the examiner's statements that if he confessed he would get parole or probation and that if he did not confess the polygraph test results would be used against him in court. Jones eventually confessed to the examiner.[1] He made another incriminating statement the next day that provided additional details of the events surrounding the murder. An August 21, 1984, interview with police was consistent with his earlier confessions.
 
 
 5
 After Jones was charged, the court appointed attorney Gordon Poindexter to represent him. Poindexter met and conferred with Jones on several occasions. Although he knew at the time that Jones was illiterate, Poindexter characterized him as "streetwise" and indicated that Jones understood his situation and gave lucid answers. Psychological tests performed while Jones was in prison indicated that Jones had an I.Q. of less than 60 and suffered from impaired functioning and impulsivity.
 
 
 6
 Based on his review of the incriminating statements and his discussions with Jones, Poindexter concluded that Jones' best alternative was to seek a plea bargain and he so advised his client. A plea agreement was reached which required Jones to plead guilty to the four counts and testify against Davis; the prosecutor agreed to a sentence of thirty-seven years.
 
 
 7
 In November 1984 Jones testified, pursuant to the plea agreement, against Davis. Although Jones' testimony was consistent with his earlier confessions, Davis was acquitted.[2] Later that month, Jones was arraigned. He initially pled guilty to all four counts, but then withdrew the pleas to all but the conspiracy count. The court rejected the plea and scheduled a second session one week later. At the second hearing on December 3, 1984, Jones pled guilty to all four counts. The judge, however, rejected the plea agreement because of the testimony he had heard during the Davis trial. Jones elected to stand on his guilty pleas despite the judge's disclaimer that the court would not be bound by the agreement; Jones was eventually sentenced to thirty-seven years imprisonment as the plea agreement specified.[3]
 
 
 8
 Jones filed his habeas petition pursuant to 28 U.S.C. Sec. 2254 in April 1987. At the evidentiary hearing, Poindexter admitted that he did no legal research for the case, though he did copy the relevant code sections and annotations. He testified that he never considered moving to suppress Jones' confession because, based on his review of the transcript of the confession and his conversations with Jones, he concluded that the confession was admissible. He felt that Jones had agreed voluntarily to take the test, that the examiner had made only truthful statements and no improper, implicit promises, and that the examiner did not physically abuse Jones or put words in his mouth. Poindexter considered the felony murder charge justified, among other reasons, because he thought Jones had acted as a lookout. He testified that he looked at the conspiracy code section before Davis was tried, but did not research the conspiracy charge after Davis was acquitted. He was, nevertheless, familiar with the principal Virginia case on the effect of a co-conspirator's acquittal on the validity of a conspiracy charge against the only other alleged co-conspirator, Jones v. Commonwealth, 72 Va. (31 Gratt.) 836 (1878).
 
 
 9
 Jones testified that Poindexter never discussed with him the use or admissibility of the confession and never discussed any specific defenses he might have to the murder or conspiracy charges. Jones raised a concern about the felony murder charge to Poindexter because he had been outside the house and was not the trigger man, but the attorney had told him that no defense was available because he accompanied (and aided) Davis. Jones testified that he would have asked for a jury trial when the question asked hypothesized that he had known at the time he had "a reasonable defense" to the felony murder charge and a "complete defense" to the conspiracy charge; he stated, "[I]f [Poindexter] had told me that I had a chance on the murder charge, if I had a defense on the conspiracy charge I would have took [sic] a jury trial." Joint Appendix (J.A.) at 236, 243.
 
 
 10
 After hearing the testimony presented, the magistrate delivered an oral opinion, holding under the two-prong ineffective assistance of counsel test in Strickland v. Washington, 466 U.S. 668 (1984); see also Hill v. Lockhart, 474 U.S. 52 (1985) (applying Strickland in the plea context), that Jones was not prejudiced by Poindexter's performance. The magistrate found that Jones never had any problem with the agreement until Davis was acquitted and concluded that Jones would not have rejected the plea bargain even had he been informed of the possible defenses.[4] In addition, the magistrate stated that, if required to rule, he would find that Poindexter's performance was "competent" under the first prong of the Strickland test.[5] The magistrate sua sponte certified probable cause to appeal, see 28 U.S.C. Sec. 2253, and this appeal followed.
 
 II
 
 11
 Jones' claim that he was denied his sixth amendment right to effective assistance of counsel presents three issues for this court. First, Jones challenges his attorney's failure to move to suppress the confession given after the polygraph examination. Next, Jones contends his attorney failed to research and pursue a viable factual defense to the felony murder charge. Finally, he asserts that his attorney failed to capitalize on a "complete" defense to the conspiracy charge that arose after Jones' only co-conspirator, Davis, was acquitted. We discuss each of these contentions in turn.
 
 A.
 
 12
 Under the standard established in McMann v. Richardson, 397 U.S. 759, 771 (1970), the voluntariness of a plea entered by a defendant represented by counsel depends on whether the attorney's advice "was within the range of competence demanded of attorneys in criminal cases." See Hill, 474 U.S. at 56 (quoting McMann ). A guilty plea generally precludes the defendant from challenging defects in the proceedings which preceded the plea; the defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Thus, in order to prevail on an ineffective assistance of counsel claim in the plea context, the defendant must first show that his counsel's performance was incompetent--that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. Second, the defendant must establish "prejudice" from counsel's incompetence, showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. The conclusions by a lower court that counsel's representation was competent and/or that the defendant was not prejudiced by the representation are mixed questions of law and fact, and thus are freely reviewed on appeal. See Hoots v. Allsbrook, 785 F.2d 1214, 1219 (4th Cir.1986); see also Strickland, 466 U.S. at 698.
 
 
 13
 Two interrelated questions of "voluntariness" underlie Jones' suppression argument: (1) whether Jones, once post-test questioning began, "no longer was making a 'knowing and intelligent relinquishment or abandonment' " of his Miranda rights, see Wyrick v. Fields, 459 U.S. 42, 47 (1982) (per curiam) (quoting Edwards v. Arizona, 451 U.S. 477, 482 (1981)); (2) whether allegedly implicit promises of leniency, along with alleged misrepresentations of the legal relevance of the polygraph test results, combined to change the circumstances of the interrogation "so seriously that [Jones'] answers no longer were voluntary," id. We conclude that Jones did voluntarily waive his Miranda rights and then confessed voluntarily; therefore, Jones cannot show "prejudice" from his attorney's failure to file a suppression motion and his ineffective assistance claim fails under Hill.
 
 
 14
 A defendant's voluntary agreement to waive his Miranda rights and take a polygraph test does not automatically extend to post-test questioning; the need for another recitation of the Miranda warnings depends on the totality of the circumstances. Wyrick v. Fields, 459 U.S. at 47. Jones argues that under the totality of the circumstances in this case he should have been given the Miranda warnings again after the polygraph test was completed and before any further questioning. Jones first asserts that he agreed to take the polygraph test only because the police told him that if he took the test and it showed that he was not involved, they would leave him alone. He then argues that his facts are sufficiently similar to those in two circuit court cases, United States v. Gillyard, 726 F.2d 1426 (9th Cir.1984) (district court's decision that under totality of the circumstances defendant's Miranda waiver was invalid not clearly erroneous), and Henry v. Dees, 658 F.2d 406 (5th Cir.1981) (reversing district court and granting habeas writ), that Miranda warnings should have been repeated.
 
 
 15
 In Henry, the suspect signed a waiver of rights specific to the polygraph test. The examiner, however, did not follow standard test procedures; instead, he informed the suspect that he had "failed" the test after asking only the first twelve questions, and then asked questions calculated to elicit an incriminating response. 658 F.2d at 408-09. As in this case, Henry was marginally mentally retarded, with an I.Q. of 65-69, id. at 407 & n. 1, a fact the court emphasized in evaluating the waiver question. "Extra precautions" were required, and the transition from "administration of a polygraph examination to police interrogation without pausing to remind [the suspect] of his privilege against self-incrimination and his right to have his counsel present during questioning" violated the suspect's rights. See id. at 409.
 
 
 16
 In affirming the district court's finding of an invalid waiver of Miranda rights, the Gillyard court emphasized, as in this case, that the suspect consented to take the test only after investigatory agents suggested it, and that the suspect was not represented by counsel. 726 F.2d at 1429.[6]
 
 
 17
 While these cases are persuasive authority, we cannot agree that, viewing the totality of the circumstances, Jones should have been given the Miranda warnings again before the polygraph examiner initiated post-test questioning. Jones did volunteer to take the test, received the Miranda warnings, and signed a waiver form before the polygraph examination began. The same agent conducted the complete test and then moved directly to further questioning, distinguishing this case from both Henry, where the polygraph test was interrupted for accusatory questioning, and Gillyard, where accusatory questioning of the suspect was conducted by different agents, began some thirty minutes after the examiner had left, and took over two hours before the suspect confessed. The examiner's questions are focused and seem to follow naturally from a reading of test results which indicated that Jones knew who committed the murder. Cf. Wyrick v. Fields, 459 U.S. at 49 (questions asked after the polygraph test "would not have caused [suspect] to forget the rights of which he had been advised and which he had understood moments before"). Finally, and perhaps most importantly, Jones reaffirmed at the end of his post-test statement that he spoke voluntarily. J.A. at 184.
 
 
 18
 Jones' conduct after the polygraph examination and post-test questioning is also relevant under the totality of the circumstances test. Jones never indicated to his counsel that he felt coerced or that his post-test statement was anything but voluntary. Similarly, Jones never raised any such concern during his several appearances before Virginia courts and before the federal magistrate. He willingly repeated the story of the burglary/murder at the trial of his confederate, Davis. Cf. Michigan v. Payne, 412 U.S. 47, 53 (1973) (Court established Miranda rules to safeguard rights of the accused and "to assure the reliability of statements made during [custodial] interrogations"); Miranda v. Arizona, 384 U.S. 436, 455 n. 24 (1966) (recognizing as one justification for required warnings that interrogation procedures may give rise to false confessions). Given all these facts, we cannot agree with Jones' contention that another set of Miranda warnings was constitutionally required before the polygraph examiner could begin post-test questioning.
 
 
 19
 Nor can we agree with Jones' contention that the polygraph examiner implied that if Jones confessed he would receive probation or parole and also misrepresented the legal effect and admissibility of the test results, thereby rendering the subsequent confession involuntary. We quote from the transcript the statements at issue:
 
 
 20
 Examiner: I want to know now ... I know what's going to happen as far as this report is concerned and what I've got to say when I write it, and I got to.... Have you ever been on probation or parole?
 
 
 21
 Jones: What's that?
 
 
 22
 Examiner: A probation officer comes and talks to you, and he later writes a report and he gives his evaluation of his conversation with you whether he thinks you are a good, reliable person and can be rehabilitated in the community and all that stuff, and that's what I'm talking about here. I got to write some kind of a judgment in my report, and like I told you, I think you are a decent man.
 
 
 23
 * * *
 
 
 24
 * * *
 
 
 25
 Right now I will tell you this: They've got enough evidence to charge you with murder. They got it. Now.
 
 
 26
 * * *
 
 
 27
 * * *
 
 
 28
 Well, like I say, you don't know what the other people are saying, but I know that they have enough evidence to charge you with that and, particularly, after this. It's up to you to say that this ain't what happened.
 
 
 29
 J.A. at 177, 178.
 
 
 30
 "Whether an admission is voluntary or induced by duress or coercion is to be determined from the totality of circumstances, including the setting in which the statement was obtained, the details of the interrogation, and the characteristics of the accused (i.e., his age, education, experience, and intelligence)." United States v. Carroll, 710 F.2d 164, 167 (4th Cir.1983). The same facts outlined above in rejecting Jones' claim that new Miranda warnings were required before the examiner initiated post-test questioning are persuasive in this context: Jones was given the Miranda warnings and signed a waiver form before the test, he reaffirmed, at the time, the voluntariness of his post-test statement, he repeated the story of his involvement in the crime at Davis' trial, and he never gave any indication to Poindexter or in court that the confession was anything but voluntary. We have carefully reviewed the transcript of the post-test statements by the polygraph examiner, and even viewing the statements, as we must, see Grades v. Boles, 398 F.2d 409, 412 (4th Cir.1968), from Jones' perspective, we find no implicit promise of leniency or misrepresentation of the legal effect of the polygraph test results.
 
 B.
 
 31
 Jones also was not prejudiced by Poindexter's failure to advise him of a "factual" defense to the felony murder charge because the purported defense pressed by Jones is not likely to have succeeded at a trial. Virginia statutorily defines felony murder as murder which occurs "in the commission of" or "attempt to commit" certain felonies, including burglary. Va.Code Ann. Sec. 18.2-32 (1988). The felony murder statute applies where "the killing is so closely related to the felony in time, place, and causal connection as to make it a part of the same criminal enterprise." Haskell v. Commonwealth, 243 S.E.2d 477, 483 (Va.1978). A co-felon is responsible for a murder committed by a confederate, even if he did not intend that the victim be killed, as long as the state can prove that the victim was killed while the felons were engaged in the underlying felony. See id.
 
 
 32
 The killing Jones alleges was committed by his confederate Davis was "so closely related" to the burglary that it is very unlikely that he could have prevailed on the purported factual defense of withdrawal or abandonment. Jones planned the burglary with Davis and accompanied him inside, carrying the murder weapon. He fled from the house when he heard the victim return, but stayed in the backyard. The fatal shot was fired, according to his own testimony, only one or one and one-half minutes after Jones left the house. Jones rejoined Davis when he emerged from the house and the two drove away, later sharing marijuana obtained from the victim's house. The killing was thus closely related in time to the burglary and the causal connection is clear.
 
 
 33
 Jones did, of course, testify that, had he known of a "reasonable" defense to the felony murder charge (and a "complete" defense to the conspiracy charge), he would not have pled guilty. But Jones' initial proposition, that the question whether a murder is so closely related to the underlying felony that felony murder applies is always a jury question, is not the law in Virginia. See Briley v. Commonwealth, 273 S.E.2d 48, 55 (Va.1980). More importantly, Jones' factual contention that the killing stemmed from a felony separate and subsequent to the burglary, namely Davis' robbery of the victim, is unsupported in the record.[7] Jones ultimately fails to accept the difficult burden he must meet to show prejudice under Hill: he must show that an affirmative defense not presented by counsel "likely would have succeeded at trial," 474 U.S. at 59, not that there was a "reasonable chance" that some factfinder could have determined that he had withdrawn and that the burglary was completed before the victim was killed, see Appellant's Brief at 31-32.
 
 C.
 
 34
 Jones' final contention is that his attorney's failure to inform him of a possible legal defense to the conspiracy charge constitutes constitutionally ineffective assistance of counsel.[8] We find, however, that Jones' attorney made a reasonable decision not to raise the legal defense; Jones' ineffective assistance claim on this count fails on the first prong of the Hill test.
 
 
 35
 Poindexter admitted that he did no research after Jones' only co-conspirator was acquitted. He was, nevertheless, familiar with the seminal Virginia case on point, Jones v. Commonwealth. After Davis' trial, Poindexter did try to renegotiate Jones' plea bargain with the state prosecutor, though it is probably not the case that the effort to renegotiate was prompted by recognition that Jones' legal position on at least the conspiracy count might have improved. The prosecutor, however, rejected Poindexter's offer, and, more importantly, testified that if Poindexter had raised the defense in an effort to get the conspiracy charge dropped, he would have rejected any change in the charges and proceeded to trial. We find significant the fact that the prosecutor had recently lost the Davis case against Jones' alleged co-conspirator and may very well have been anxious to try Jones and get a murder conviction. In addition, Poindexter's focus throughout the plea negotiations was to minimize the total number of years his client would face and not specifically the number of charges. Poindexter's strategy is unsurprising given that Jones faced possible life imprisonment,[9] and nothing in the record indicates that Jones did not agree with this strategy. Given the apparent unstableness of the plea bargain, we cannot say that Jones has overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." See Strickland v. Washington, 466 U.S. at 689.
 
 
 36
 Although our conclusion that Jones cannot show that Poindexter's representation fell below an objective standard of reasonableness is sufficient to dismiss Jones' ineffective assistance claim on this count, that conclusion is strengthened by further review of arguments, pressed by Jones, which necessitate consideration of both prongs of the Hill test. The substance of Jones' incompetence argument is that because he had a clear legal defense to the conspiracy charge after Davis was acquitted, Poindexter's failure to research the defense and advise his client of its viability cannot have been objectively reasonable conduct for a competent attorney. The focus, then, is the prejudice prong of the Hill test. We disagree with Jones' assertion that he had a clear legal defense to the conspiracy charge and believe that, even if the defense "likely" would have succeeded at trial in a Virginia court, Jones probably would have pled guilty to the conspiracy charge.
 
 
 37
 Jones "legal defense" is premised on the general rule, in Virginia as elsewhere, that a person charged with conspiracy cannot be convicted if his only co-conspirator has been acquitted. See Jones v. Commonwealth, 72 Va. (31 Gratt.) 836, 851 (1878); 4A Michie's Jurisprudence for Virginia and West Virginia, Conspiracy Sec. 11, at 138 (1983); R. Groot, Criminal Offenses and Defenses in Virginia 52 n. 10 (1984); see also United States v. Shuford, 454 F.2d 772, 779 (4th Cir.1971) (construing federal conspiracy statute), disapproved on other grounds, Standefer v. United States, 447 U.S. 10 (1980). Jones' only co-conspirator, Davis, was acquitted after the plea was negotiated but before the state court considered it. The Jones case, however, notes several exceptions to the general rule,[10] intimating in one passage that the acquittal of one separately tried co-conspirator may not always prevent the conviction of his confederate. See 72 Va. at 852. Poindexter was familiar with Jones but nevertheless believed that a co-conspirator in his client's position could still be convicted, a view shared by the state prosecutor.
 
 
 38
 The dicta in Jones has not been explored in later cases in Virginia. Courts in other jurisdictions, however, have not always followed the "general rule," even when the acquittal of the lone co-conspirator precedes the conviction of his confederate. Compare Eyman v. Deutsch, 373 P.2d 716 (Ariz.1962) (conviction of defendant who pled guilty to conspiracy after co-conspirator was acquitted overturned), and Rosenberg v. State, 460 A.2d 617, 620 (Md.App.1983) (subsequent acquittal of a second co-conspirator will not upset prior conviction of the other co-conspirator, but prior acquittal mandates acquittal of subsequently tried co-conspirator), with Marquiz v. Colorado, 726 P.2d 1105 (Colo.1986) (en banc) (defendant's conspiracy conviction upheld although only co-conspirators were previously acquitted in separate trials). In the absence of further explication of the Jones case by Virginia's courts, we are chary to agree with Jones that Davis' acquittal established a clear legal defense to the conspiracy charge.
 
 
 39
 We also doubt that, even if fully informed of the possible legal defense, there was a "reasonable probability" under Hill that Jones would not have pled guilty. Although the Hill Court said that when the failure to assert an affirmative defense is the basis of an ineffective assistance claim, the resolution of the prejudice inquiry "will depend largely" on the likely success of the defense at trial, 474 U.S. at 59, other factors indicate that, assuming likely success at trial, Jones probably still would have pled guilty. Jones' assertions that he would have asked for a jury trial if informed of the defenses discussed in this opinion consistently linked the legal conspiracy defense with the "factual" defense to the felony murder charge. As we have shown, Jones' purported factual defense is not likely to have succeeded at trial. It thus seems improbable that Jones would have demanded a trial when his prospects on the most serious charge facing him were not favorable. Though his brief correctly notes that his prospects for parole do depend on the number of sentences and not just on the number of years to be served, see Virginia Parole Board Policy Manual 1 (1988) (parole decision factor D(1)(B)), nothing in the record indicates that Jones did not share Poindexter's view that the total number of years was the key variable in the plea agreement. Finally, Jones can only speculate that, after the state trial judge rejected the plea agreement at the second arraignment, no possible incentive to plead guilty to the conspiracy charge existed because had the judge known of the defense to that charge, he "certainly" would have sentenced Jones to no more than thirty-seven years. What is certain from the record is that Poindexter had discussed with Jones the possibility that the judge would reject the agreement, and that the decision had been made that Jones would not change his guilty plea. On these facts, we agree with the magistrate's general conclusion that even if informed of the possible defenses, Jones probably would have pled guilty.
 
 
 40
 In sum, we find that Jones was competently represented by counsel during the plea proceedings and his guilty plea was entered voluntarily. We therefore affirm the judgment of the district court dismissing Jones' petition for habeas corpus.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 Part of the post-test conversation between Jones and the examiner was recorded. The transcript of the conversation was made available to Jones' attorney and is part of the record before this court
 
 
 [2]
 The record in this case provides few details of Davis' trial other than the facts that Jones testified at the trial and that Davis was acquitted by the jury
 
 
 [3]
 Jones received a thirty-five year sentence for burglary, a concurrent thirty-five year term for felony murder, a concurrent ten-year term for conspiracy, and a two-year sentence on the firearm charge
 
 
 [4]
 The magistrate began and ended his analysis with the finding that Jones never showed any reluctance to plead until Davis was acquitted; therefore, he had no basis to argue that had he known of the possible defenses, he would have held out for a trial. Jones correctly points out that the magistrate never evaluated the likelihood of success of the defenses, the analysis the Court in Hill said would "largely" answer the "prejudice" inquiry in the circumstances of this case. 474 U.S. at 59
 
 
 [5]
 In his order entered on March 24, 1989, the magistrate held that Jones failed to establish either prong of the Strickland v. Washington ineffective assistance of counsel test
 
 
 [6]
 The Gillyard court also found important the relative narrowness of the standard Miranda warning given in that case. The waiver form Jones signed prior to the polygraph examination, form "SP-165A," is not included in the record before this court. The statement which Jones signed the day after the polygraph examination included the following warning:
 I have the right to remain silent and not make any statement at all; that any statement I make may be used against me at my trial; that any statement I make may be used as evidence against me in court; that I have the right to have a lawyer present to advise me prior to and during any questioning; that if I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning and that I have the right to terminate the interview at any time.
 Prior to and during the making of the statement, I have and do hereby knowingly, intelligently, and voluntarily waive the above explained rights and I do make the following voluntary statement ... of my own free will and without any promises or offers of leniency or favors, and without compulsion or persuasion by any person or persons whomsoever....
 J.A. at 189.
 
 
 [7]
 Jones emphasizes that Poindexter's belief that Jones served as a lookout is inconsistent with the position at least implicitly taken by the state when it presented Jones as the principal witness at Davis' trial. Davis was apparently charged with robbing the victim, but despite Jones' testimony he was acquitted on this and the other charges. Whatever position the state took at Davis' trial, it is unlikely, given the case the state could have presented against Jones based on the confession alone, that the purported factual defense of withdrawal or abandonment would have succeeded had he gone to trial
 
 
 [8]
 The Virginia Code defines conspiracy to commit a felony as follows:
 If any person shall conspire, confederate or combine with another ... to commit a felony ... he shall be guilty of a felony....
 Va.Code Ann. Sec. 18.2-22(a) (1988).
 
 
 [9]
 See Va.Code Ann. Sec. 18.2-32 (1988) (felony murder punishable as Class 2 felony); Sec. 18.2-89 (burglary committed while armed with deadly weapon punishable as Class 2 felony); Sec. 18.2-10 (Class 2 felonies punishable by life imprisonment or a term not less than 20 years)
 
 
 [10]
 The holding in Jones was, in fact, an "exception" to the general rule: the court overturned the appellant's conspiracy conviction, but ruled that the reversal would not affect the judgment against his lone confederate, with whom he was tried. 72 Va. at 851-52