**[J-48-2013] [MO: Castille, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 99 MAP 2012 |
| | : |
| Appellant | : Appeal from the Order of Superior Court |
| | : entered March 1, 2012 at No. 646 MDA |
| | : 2011 which Reversed and Remanded the |
| v. | : PCRA Order of the Dauphin County Court |
| | : of Common Pleas, Criminal Division, |
| | : entered December 27, 2006 at No. |
| ELTON EUGENE HILL, | : CP-22-CR-0001407-1998. |
| | : |
| Appellee | : SUBMITTED:   May 3, 2013 |

## CONCURRING OPINION

**MR. JUSTICE EAKIN**                              **DECIDED:   November 21, 2014**

I agree with the majority's well-reasoned opinion, but would remand to the Superior Court only appellee's claim regarding the April 21st statement.   Our review of a court's ruling on a PCRA petition is "limited to whether the findings of the PCRA court are supported by the record and are free from legal error."   Commonwealth v. Miller, 888 A.2d 624, 629 (Pa. 2005) (citation omitted).   Finding such support and no error, I would affirm the PCRA court as to appellee's post-polygraph statement.

As the majority points out, counsel's conduct must be analyzed under the governing law at the time of the trial.   Although the Superior Court applied the factors in United States v. Leon-Delfis, 203 F.3d 103 (1st Cir. 2000), that case was decided after appellee's 1998 trial.   However, the cases it analyzed to reach the four-prong test it applied had been decided before 1998: Wyrick v. Fields, 459 U.S. 42 (1982) (per curiam); United States v. Johnson, 816 F.2d 918 (3d Cir. 1987); United States v. Gillyard, 726 F.2d 1426 (9th Cir. 1984); and United States v. Eagle Elk, 711 F.2d 80 (8th Cir. 1983).

In Wyrick, the United States Supreme Court rejected as "illogical" the Eighth Circuit's rule requiring a separate set of Miranda[1] warnings after a polygraph examination to revive a valid waiver of Fifth Amendment rights. The Supreme Court found the defendant's pre-polygraph waiver continued through post-test questioning "unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." Wyrick, at 47 (citation omitted). The Court made clear the totality of the circumstances must be analyzed and found the circumstances clearly showed the defendant waived his Fifth Amendment rights as to post-polygraph questioning. The Court observed the defendant himself requested the polygraph test with the benefit of counsel and he was questioned post-examination by the same person who conducted the test. Under these facts, the Court concluded the Eighth Circuit's holding amounted to a rule that:

> [N]otwithstanding a voluntary, knowing, and intelligent waiver of the right to have counsel present at a polygraph examination, and notwithstanding clear evidence that the suspect understood that right and was aware of his power to stop questioning at any time or to speak to an attorney at any time, the police again must advise the suspect of his rights before questioning him at the same interrogation about the results of the polygraph.

Id., at 48. The Court opined "the questions put to [the defendant] after the examination would not have caused him to forget the rights of which he had been advised and which he had understood moments before." Id., at 49. Accordingly, it reversed the decision of the Eighth Circuit and remanded to that court. Id. The Court declined to address

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

whether the defendant's Sixth Amendment rights were violated[2] because the Eighth Circuit rested its decision solely on the Fifth Amendment.

Six years later, the High Court expressly rejected the argument that Sixth Amendment waivers are subject to greater scrutiny than Fifth Amendment waivers, stating "we have never suggested that one right is 'superior' or 'greater' than the other, nor is there any support in our cases for the notion that because a Sixth Amendment right may be involved, it is more difficult to waive than the Fifth Amendment counterpart." Patterson v. Illinois, 487 U.S. 285, 297-98 (1988). Observing counsel's "relatively simple and limited" role during post-charge questioning, as compared to trial, the Court held "[s]o long as the accused is made aware of the 'dangers and disadvantages of self-representation' during postindictment questioning, by use of the Miranda warnings, his waiver of his Sixth Amendment right to counsel at such questioning is 'knowing and intelligent.'" Id., at 300. Thus, notwithstanding Wyrick's Fifth Amendment roots, the decision applies with equal force to appellee's Sixth Amendment claim.

Here, as in Wyrick, there is "clear evidence" appellee fully understood his rights and expressly waived them prior to the interrogation.[3] Appellee, like the defendant in Wyrick, had the assistance of counsel when he completed a written pre-test waiver,[4]

---

[2] On remand, the Eighth Circuit concluded they were not. Fields v. Wyrick, 706 F.2d 879, 881-82 (8th Cir. 1983).

[3] The significance of who requested the polygraph has "essentially been negated" by the High Court's decision in Montejo v. Louisiana, 556 U.S. 778 (2009). See Commonwealth v. Hill, 42 A.3d 1085, 1095 n.9 (Pa. Super. 2012). Likewise, who initiated the questioning has been found irrelevant, as the Superior Court itself points out.

[4] The Superior Court conceded appellee, like the defendants in Wyrick and Eagle Elk, had the aid of counsel during the pre-polygraph process, but noted appellee's counsel did not have a second discussion with him between the end of the examination and the beginning of the post-test interview. However, neither Wyrick nor Eagle Elk involved such a discussion, and the Superior Court cited no authority suggesting its absence (continued…)

which is memorialized in the trial transcript.  Moreover, Detective Kelly testified that before conducting the post-polygraph interview, he confirmed with appellee that he was aware of his rights, N.T. Trial, 11/18/98, at 324; appellee admitted he understood he had the right to discontinue the post-test questioning at any time, see N.T. Trial, 11/19/98, at 608-09.    Although the continuity between the polygraph examination and the post-polygraph interview was not as seamless as merely "turning off the machine," the evidence shows that only 15 minutes after appellee finished the examination and provided his second written statement, Detective Kelly returned with Detective Steenson, the polygraph examiner, and questioned appellee regarding the post-test statement. There simply was no new significant change in circumstances such as might invalidate his previous waiver.

In rejecting the PCRA court's ruling, the Superior Court emphasized the absence of evidence that appellee's waiver expressly applied to post-polygraph questioning, or that he was informed of the possibility of such questioning.   Neither of these factors was present in Wyrick, and the court's reliance on them contradicts Wyrick.   Further, the conceptual tactic of segmenting the post-Miranda process — pre-test, test, post-test — is a tempting approach, but misleading for the purpose of analyzing police-suspect interaction.  Where the contact is ongoing, absent a relevant change in the dynamic between the parties, a general waiver continues in force until there is a change of circumstances not remotely present here.

---

(…continued)

should weigh against the continued vitality of a valid waiver.   Indeed, we are offered no authority that the end of the test somehow initiates a new interface between police and citizen requiring reiteration of warnings already given and understood.   The two cited circuit court cases holding a pre-polygraph waiver did not extend to post-polygraph questioning, Johnson and Gillyard, involved defendants who had no representation at all.

A general unrestricted waiver is just that — unrestricted.   Had appellee or counsel wanted the waiver to be limited, preclusive of post-test questioning, this could easily and effectively have been accomplished — in reality, such restrictions are common, but no such limitation was expressed or implied here.   Looking to the absence of an affirmative segment-specific waiver is not the proper analysis — a waiver is not negated by the lack of enumerated situations to which it might apply.   The absence of conditions or limitations on the unqualified waiver shows the waiver was broad, and that it continued in effect, not that it somehow died for lack of specificity.

That said, many courts have looked to whether the waiver, by its terms, applies to post-polygraph questioning.[5]   Indeed, where a defendant has effectuated a valid waiver using a form that contained such specific language, the waiver would clearly extend to post-polygraph questioning.   However, the significance the Superior Court attributed to the <u>absence</u> of this evidence ignores the fact the <u>Wyrick</u> Court found irrelevant the Eighth Circuit's assertion that "there was no indication that [the defendant] or his lawyer anticipated that [the defendant] would be asked questions after the examination[,]" noting

---

[5] In <u>Gillyard</u>, the Ninth Circuit noted the verbal warning given in <u>Wyrick</u> provided: "'If you are now going to discuss the offense under investigation, which is rape, with or without a lawyer present, you have a right to stop answering questions at any time or speak to a lawyer before answering further, even if you sign a waiver certificate.'"   <u>Gillyard</u>, at 1429 (emphasis omitted) (quoting <u>Wyrick</u>, at 44).   The court stated: "The <u>Wyrick</u> warning made it clear to the defendant that he was not merely taking a polygraph examination but was going to be asked questions about a specific offense under investigation."   <u>Id.</u>   Three years later, the court in <u>Johnson</u> cited <u>Gillyard</u> for the proposition that "whether the waiver form initially presented to the suspect clearly indicates that post-examination questioning is a possibility" was "among the most significant circumstances to be considered[,]" <u>Johnson</u>, at 922 n.4 (citing <u>Gillyard</u>, at 1429), and other courts later followed suit.   However, the <u>Wyrick</u> waiver did not "clearly indicate[] that post-examination questioning [was] a possibility."   <u>Id.</u> (citation omitted).   In fact, the only thing the language cited in <u>Gillyard</u> added to the standard <u>Miranda</u> warning was that it named a specific topic of questioning, namely, rape.

"it would have been unreasonable for [the defendant] and his attorneys to assume that [he] would not be informed of the polygraph readings and asked to explain any unfavorable result." Wyrick, at 47.[6]

Moreover, in describing counsel's purported failure to advise appellee of the possibility of a post-polygraph interview, the Superior Court appears to have misread the notes of testimony. Specifically, the court stated trial counsel testified that, as to the polygraph, he "merely advised [appellee] that he was going to take a polygraph examination and that he should tell the truth[,]" advice that the court opined was "understandable[ because counsel] testified that he had no idea that Detective Kelly would initiate a new interrogation after the polygraph examination by Detective Steenson had been completed." Hill, at 1096 (citations omitted). Contrary to the court's assertions, trial counsel testified he discussed the polygraph test "at length" with appellee and in his 40 years of experience as both a defense attorney and a prosecutor, a post-polygraph interview was "always" conducted after the actual polygraph examination. N.T. PCRA Hearing, 4/25/06, at 49-50.[7]

---

[6] This statement also contravenes the Superior Court's interesting suggestion that "in drafting the questions to be asked during the polygraph examination[, counsel] established the scope of [appellee]'s waiver of his right to counsel during the polygraph examination." Hill, at 1096. Following the remand in Wyrick, the defendant argued he did not waive his Sixth Amendment right to counsel because his counsel and law enforcement agreed the waiver was limited to the polygraph examination, citing counsel's suppression hearing testimony to that effect. Fields, at 881. The Eighth Circuit, however, appropriately concluded the Supreme Court had already rejected the defendant's claim.

[7] The Superior Court also stated counsel "understood that a polygraph test sometimes includes both pre-polygraph and post-polygraph interviews." Hill, at 1096 (emphasis added) (citing N.T. PCRA Hearing, 4/25/06, at 49). To the contrary, the record reveals that when trial counsel was asked if "[o]ftentimes, there is a post-polygraph interview in which the results are discussed … with the person interviewed[,]" counsel went further, stating, "In fact, that is always the case." N.T. PCRA Hearing, 4/25/06, at 49-50 (continued…)

While counsel testified he "didn't believe there was going to be any questioning, other than the tester himself[,]" he also stated "in many cases, it is someone else from the department, as well." Id., at 51-52. This waiver was not specifically restricted to questions from one particular officer — Miranda warnings are meant to advise an accused and are not officer-specific, nor can waivers of rights be circumscribed after the fact. Justice Saylor is correct that the waiver form, as read by Detective Steenson at trial, did ask appellee if he consented to talk "with me," "me" being Detective Steenson; on the surface, this could be interpreted to limit the waiver to questions by the polygraph examiner, but there is no evidence at all nor circumstantial reason to believe that such a precise limitation was contemplated by the parties in this case. In my view, unless explicit enumerations of the sort appellee would have are made part of the waiver, the waiver covers exactly what the warnings tell him: anything you say can and will be used against you.

Even if the original waiver were restricted as appellee would now have it, appellee subsequently waived his rights regarding the questioning by Detective Kelly.[8] It is well established that a defendant need not expressly waive his right to remain silent or his right to counsel in order to effectuate a valid waiver. Just as "magic words" are not necessary

---

(…continued)
(emphasis added). This is not an insignificant difference; under the Superior Court's analysis, it bears on the credibility of appellee's assertion that when he executed the waiver, he was oblivious to the possibility of a post-polygraph interview. In this, the Superior Court gilded its reasoning, as "always" is quite different than "sometimes."

[8] While Justice Saylor is correct that appellee's invocation of his right to counsel prohibited police-initiated interrogation in counsel's absence, in my view, appellee clearly initiated the contact — which, as noted above, was one continuous interaction with law enforcement — by volunteering, with the assistance of counsel, to take a polygraph test — he "evinced a willingness and a desire for a generalized discussion about the investigation[,]" see Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983).

to invoke one's right to counsel, neither are they necessary to waive that right. "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case." North Carolina v. Butler, 441 U.S. 369, 373 (1979). Before the post-polygraph interview, appellee had reviewed his constitutional rights with both his attorney and Detective Steenson. At trial, Detective Kelly stated, "When I sat down, I indicated to [appellee] that I was aware he had his Miranda rights and he was aware of his Miranda rights. He indicated that he was, and I conducted the interview at that point." N.T. Trial, 11/18/98, at 324.[9] Appellee then proceeded to answer Detective Kelly's questions, and at no point did he indicate he wanted the questioning to cease. This Court has, on multiple occasions, found waiver in similar circumstances. See Commonwealth v. Bomar, 826 A.2d 831, 843-44 (Pa. 2003) (finding waiver where defendant twice indicated he understood rights and answered officers' questions); Commonwealth v. Hughes, 639 A.2d 763, 770 (Pa. 1994) (finding waiver where defendant indicated he understood after each right was read to him and answered officers' questions).

To succeed on his PCRA petition, appellee had the burden to prove by a preponderance of the evidence that his Sixth Amendment claim had arguable merit, which he failed to do. Wyrick requires that in evaluating the scope of pre-polygraph waivers, a court must consider the totality of the circumstances, which here, based on the credible record evidence, shows appellee: (1) had the assistance of counsel, who knew the polygraph examination would "always" include a post-test interview; (2) discussed the examination with counsel "at length"; (3) executed a valid waiver, which informed him he had the right to cease questioning at any time; (4) knew he could stop the post-polygraph

---

[9] That appellee was, in fact, aware of his rights is beyond dispute — he admitted as much under oath.

questioning at any time; and (5) never invoked his right to counsel throughout this process. Moreover, by acknowledging he understood his rights, answering Detective Kelly's questions, and failing to indicate a desire to stop or consult with his attorney, appellee effectuated a separate waiver as to the detective's post-polygraph questioning.

"Counsel cannot be deemed ineffective for failing to raise a meritless claim[,]" Commonwealth v. Weiss, 81 A.3d 767, 783 (Pa. 2013) (citation omitted), and under these circumstances, any claim that appellee did not knowingly and intelligently waive his Sixth Amendment rights by answering the detectives' post-polygraph questions would have been just that. Accordingly, I would hold the PCRA court correctly dismissed appellee's PCRA petition with regard to his post-polygraph statement and remand to the Superior Court to address his remaining claim.