UNITED STATES, Appellee,

v.

Hector LEON–DELFIS, Defendant, Appellant.

United States, Appellee,

v.

Eladio Santiago–Sanchez, Defendant, Appellant.

Nos. 99–1021, 99–1299.

United States Court of Appeals, First Circuit.

Heard Nov. 1, 1999.

Decided Feb. 16, 2000.

Eric M. Quetglas–Jordán, San Juan, PR, by appointment of the Court, for appellant Héctor León–Delfis.

Joaquín Monserrate–Matienzo, with whom Joaquín Monserrate–Peñagarícano, was on brief, for appellant Eladio Santiago–Sánchez.

Aixa Maldonado–Quiñones and Michelle Morales, Assistant United States Attorneys, with whom Guillermo Gil, United States Attorney, and Jorge E. Vega–Pacheco, U.S. Attorney's Office, Hato Rey, PR, Chief, Criminal Division, were on brief, for appellee.

Before TORRUELLA, Chief Judge, WALLACE,* Senior Circuit Judge, and LYNCH, Circuit Judge.

WALLACE, Senior Circuit Judge.

Héctor León–Delfis and Eladio Santiago–Sánchez were tried together for their participation in a conspiracy to embezzle money while they were employees of the United States Department of Veterans Affairs in Puerto Rico. León–Delfis was convicted of one count of conspiracy to embezzle monies of the United States in violation of 18 U.S.C. §§ 371, 641, 654. Santiago–Sánchez was convicted of (1) conspiracy to embezzle monies of the United States; (2) embezzlement of public money; (3) embezzlement of money by an employee of the United States; and (4) money laundering, in violation of 18 U.S.C. §§ 371, 641, 654, 1957. The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291. We reverse León–Delfis' conviction, but affirm Santiago–Sánchez's conviction.

* Of the Ninth Circuit, sitting by designation.

## I.

The Department of Veterans Affairs (Department) reimburses veterans for certain medical expenses. To be reimbursed, a veteran submits a claim with the help of a Department benefits counselor. A claim examiner inspects the claim to determine accuracy and eligibility, then reviews the claim with a senior claim examiner. After the senior claim examiner approves the claim, the veteran is paid. The entire process normally takes 48 days to complete.

The government alleged in its indictment that Department employees in Puerto Rico encouraged veterans to submit inflated medical expense claims fraudulently which they processed more quickly than normal in return for a fifty-percent kickback. It stated that the government lost more than $1.3 million through this embezzlement. The government indicted six people for their involvement, including León–Delfis, a benefits counselor, and Santiago–Sánchez, a claim examiner.

On appeal, León–Delfis argues that the district court erred in (1) not suppressing evidence of a confession he gave to Federal Bureau of Investigation (FBI) agents following a polygraph test and (2) not giving the jury a multiple conspiracy instruction. León–Delfis, who filed his appellate brief first, attempted to adopt by reference those arguments that Santiago–Sánchez would raise later in his brief. Even assuming he can do so, Santiago–Sánchez raised no new issues that apply to León–Delfis.

Santiago–Sánchez, in his brief, attempted to adopt by reference León–Delfis' argument regarding the jury instruction. *See* Fed. R.App. P. 28(i). Additionally, he argues the district court (1) made several evidentiary errors against him and (2) should not have sentenced him to pay restitution.

## II.

■ León–Delfis contends that the district court should have granted his motion to suppress evidence of a confession he gave to FBI agents after he took a polygraph test because he did not waive his Sixth Amendment right to counsel for purposes of the post-polygraph questioning. In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law and rulings on the constitutionality of the government's conduct de novo. *See United States v. Beras,* 183 F.3d 22, 25 (1st Cir.1999).

### A.

León–Delfis testified to the following events at the hearing on the motion to suppress. Shortly before trial began in June 1998, he and his attorney attempted to hold a meeting with the Assistant United States Attorney prosecuting the case. The meeting was denied; however, León–Delfis was asked, and agreed, to submit to a polygraph test. He reported to FBI special agents for the test, but the appointment was rescheduled because he was not accompanied by counsel. On June 15, León–Delfis and his attorney arrived for the test. Special Agent López asked León–Delfis to sign two waiver of rights forms in Spanish: a general *Miranda* waiver, and a specific waiver for polygraph questioning. A translation of the first form reads as follows:

INTERROGATORY; NOTIFICATION OF THE RIGHTS; YOUR RIGHTS

Before I make [sic] any questions you should understand what your rights are.

You have the right to keep silent.

Whatever you say can be used in the court against you.

You have the right to consult a lawyer so that he can instruct you before we make [sic] the questions and also you have the right that the lawyer be present during the interrogatory.

If you cannot pay for the expenses of a lawyer, one will be assigned to you before we begin the interrogatory, if you so wish.

If you decide to answer the questions now without the presence of a lawyer, still you have the right to deny to answer in any moment. You also have the right to interrupt at any moment until you have consulted a lawyer.

RESIGNATION OF THE RIGHTS

I have read this statement of my rights and I understand what they are. I am willing to make a statement and answer the questions. I do not want a lawyer to be present at this moment. I am conscious of what I do. They have not made promises to me and I have not been threatened, and they have not put any pressure on me.

A translation of the second form reads as follows:

CONSENT FOR INTERROGATORIES WITH THE USE OF POLYGRAPH

Before we make [sic] any question with the use of polygraph (liar [sic] detector) with respect to receipt of money from Veterans Administration clients you should have knowing [sic] of your rights

YOUR RIGHTS

You have the rights [sic] to deny to take an examination with the polygraph.

If you decide to take the examination with the polygraph, you have the right to deny to answer any question.

RESIGNATION OF RIGHTS AND CONSENT

I have read this statement about my rights and I understand my rights. I am willing of my own voluntary [sic] to be questioned using the polygraph during my interview. I understand and I know what to do. Nobody made me promises, threatened [sic] neither have used any pressure against me in order to obtain my consent for the used [sic] of the polygraph. I understand my con-

sent for the used [sic] of the polygraph. . . .

León–Delfis testified that he understood that the first waiver applied to questions Agent López would ask him before the actual polygraph test, and that the second waiver applied to yes-or-no questions asked during the polygraph test. He testified that he never consented to post-test questioning. León–Delfis stated that Agent López told him the test would take two to two and one-half hours to complete and his attorney could not be present during the test. León–Delfis' attorney decided to return to his office, and he told Agent López and Agent Narro, who would be observing the testing, that he was available by telephone. Additionally, he told León–Delfis to call him or return to his office immediately after the test was administered.

León–Delfis testified that Agent López asked only eight questions, and the test took only 20 to 25 minutes. León–Delfis thought he was free to leave after the test. However, immediately after the test, while he was still attached to the polygraph, Agent López asked him, "How do you think that you did?" León–Delfis responded, "Well, I think I did well because all I did was tell the truth." Agent López responded, "Look, you flunked the test, so how about telling us the truth." León–Delfis remembered that Agent López immediately began to question him, joined by Agent Narro shortly thereafter. He felt pressured: the agents told him the United States Attorney would "destroy you in Court in front of your family"; that he was a half-man; and that if he was going to cooperate, "it has to be between today or tomorrow," and if he delayed, they might press charges for other crimes. In an interview lasting over an hour that followed, León–Delfis confessed to his participation in the conspiracy.

Agent López testified at the suppression hearing that a typical polygraph test consisted of pre-test questioning to determine suitability for testing and to build rapport between the examiner and the examinee; the test itself; and post-test questioning to present the results of the test and allow the examinee to explain the results if desired. However, when Agent López was asked on cross-examination whether he informed León–Delfis and León–Delfis' attorney that post-test questioning might occur, he first answered, "I wasn't asked," and then, although not clear, he seemed to testify that he had not explained the post-test questioning procedure. He also acknowledged that post-test questioning was not mentioned in the waivers León–Delfis signed. When asked why he told León–Delfis that the test would take two to two and one-half hours to complete, when in fact the test took less than one-half hour, he answered "That was my estimate." He stated that FBI policy discouraged an attorney's presence during the test, but he denied prohibiting León–Delfis's attorney from attending. Agent López said that after the test was finished, he merely said, "Mr. León, we have a problem. You are not being . . . completely honest," and that León–Delfis then "started providing explanations." However, he denied pressuring or threatening León–Delfis during the post-test interview. He also reminded the court that León–Delfis was interviewed by FBI Agent Johnson twice before, in November 1996 during the initial FBI investigation of the case, and that statements he made during the polygraph test conflicted with these previous interviews.

The district court denied the motion to suppress, stating:

I believe that Mr. León was no newcomer to being interviewed by F.B.I. agents. He had been interviewed previously on two occasions. Here in front of his attorney he signed two waivers; one of them for the polygraph test, the other one for any questions that might be asked of him even at the time that the pre-test interview was held. He even at that time according to the testimony of Agent López, he stated that he had given prior information which was not cor-

rect. The onus as counsel tried to impress upon the Court, the onus is not on the F.B.I. agent or the government agent taking the—making the interview to stop and say, hey, do you want to call your attorney now. He was aware where his attorney was.

As a matter of fact he had gone the day previously without an attorney and the agent said no, you come back with your attorney because we want your attorney to be present and so the perception of the Court is that he was aware of what was happening, that any statements he made after he was informed, that he did not pass, was not a subterfuge used by the government to obtain admissions. Therefore, the Court understands that the statements he made post the interview, post the exam were voluntary and, therefore, the motion to suppress is denied.

The confession León–Delfis gave in the post-test interview was used against him at trial. During the jury's deliberation, it requested to have testimony describing León–Delfis' confession reread to them, and shortly thereafter, the jury found León–Delfis guilty.

■ The factual issue of concern is whether León–Delfis was advised of and waived his Fifth and Sixth Amendment rights for the post-test interview in which he made incriminating responses to FBI questions. At the suppression hearing, León–Delfis testified that Agent López informed him about pre-test questioning but not about post-test questioning. Agent López testified that he usually explains that he will ask post-test questions; however, on cross-examination, he appears from the record to state that he did not inform León–Delfis of this possibility. In its appellate brief, at oral argument, and in a post-oral argument letter, the government pointed out portions of Agent López's testimony that it contends shows that he advised León–Delfis about post-test questioning. Unfortunately, the district court did not make a specific finding in this regard, nor did a party ask for such a finding. However, the court did make a finding that one of the waivers León–Delfis signed applied to pre-test questioning and the other waiver applied to the polygraph questioning. This at least suggests that the court believed León–Delfis's testimony that he was not informed about post-test questioning. The fact that the district court failed to make any finding on this issue militates against the government. "It is a general principle of appellate jurisprudence that a party desiring more particularized findings at the trial court level must request them from the trial court." *United States v. Tosca*, 18 F.3d 1352, 1355 (6th Cir.1994). Absent a finding on this issue, the responsibility falls on us to examine the record and conclude whether the government met its burden of demonstrating that a proper warning was given. We have scrutinized the testimony from the suppression hearing, and found substantial evidence to support a finding that Agent López did not inform León–Delfis about post-test questioning. That was León–Delfis' testimony, and appears to be Agent López's testimony when asked that specific question on cross-examination. Certainly this interpretation is consistent with Agent López's earlier testimony when he was called upon to testify whether he advised León–Delfis post-test questioning might occur: he merely responded "I wasn't asked."

Based upon the record and the district court findings, we assume that León–Delfis was not advised by Agent López of the possible post-test interrogation.

### B.

The Sixth Amendment to the United States Constitution states: "In all criminal proceedings, the accused shall enjoy the right ... to have the assistance of counsel for his defense." That right "is indispensable to the fair administration of our adversarial system of criminal justice." *Maine v. Moulton*, 474 U.S. 159, 168, 106

110

S.Ct. 477, 88 L.Ed.2d 481 (1985). Accordingly, the Supreme Court has recognized

> that the assistance of counsel cannot be limited to participation in a trial; to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself. Recognizing that the right to the assistance of counsel is shaped by the need for the assistance of counsel, we have found that the right attaches at earlier, critical stages in the criminal justice process where the results might well settle the accused's fate and reduce the trial itself to a mere formality.

*Id.* at 170, 106 S.Ct. 477 (internal quotation and citations omitted).

■ Pursuant to the Sixth Amendment, "a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (internal quotation and citations omitted). Thus, the government does not, and cannot, dispute that León–Delfis' Sixth Amendment right to counsel attached previous to the questioning at issue, because he was arraigned on May 7, 1997, prior to the polygraph test and post-test questioning on June 15, 1998. *See id.; see also Michigan v. Jackson*, 475 U.S. 625, 629, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) ("The arraignment signals the initiation of adversary judicial proceedings and thus the attachment of the Sixth Amendment . . . .") (internal quotation and citation omitted). Additionally, the government does not, and cannot, challenge that León–Delfis' Sixth Amendment right to counsel applied to the post-polygraph questioning. *See id.* at 630, 106 S.Ct. 1404 (stating that after arraignment, "government efforts to elicit information from the accused, including interrogation, represent critical stages at which the Sixth Amendment applies") (internal quotation omitted). Thus, the issue is whether León–

Delfis validly waived that right for purposes of questioning that occurred after the polygraph test.

■ The government has the burden to "prove an intentional relinquishment or abandonment" of the Sixth Amendment right to counsel. *Brewer*, 430 U.S. at 404, 97 S.Ct. 1232, *quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), *overruled in part on other grounds by Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *see also Jackson*, 475 U.S. at 633, 106 S.Ct. 1404. The Court has stated "that we should 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *Jackson*, 475 U.S. at 633, 106 S.Ct. 1404, *quoting Johnson*, 304 U.S. at 464, 58 S.Ct. 1019. "Doubts must be resolved in favor of protecting the constitutional claim." *Jackson*, 475 U.S. at 633, 106 S.Ct. 1404. "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson*, 304 U.S. at 464, 58 S.Ct. 1019.

■ In *Edwards*, the Court, considering the Fifth Amendment right to counsel, held that after an accused person in custody "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85, 101 S.Ct. 1880. Several years later, in *Michigan v. Jackson*, the Court held that the rule in *Edwards* also applied after a defendant invoked his Sixth Amendment right to counsel:

> We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his [Sixth Amendment] right to counsel,

any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.

Although the *Edwards* decision itself rested on the Fifth Amendment and concerned a request for counsel made during custodial interrogation, the [lower court] correctly perceived that the reasoning of that case applies with even greater force to these [Sixth Amendment] cases.

475 U.S. at 636, 106 S.Ct. 1404; *see also Moulton,* 474 U.S. at 170–71, 106 S.Ct. 477 ("Once the right to counsel has attached and been asserted, the State must of course honor it.... [A]t the very least, the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel.") (footnote omitted). *Jackson* makes it clear that once a defendant's Sixth Amendment right to counsel attaches, the police cannot initiate questioning in the absence of counsel without violating that right.

■ While looking at the totality of the circumstances, several courts have articulated relevant facts to be considered in identifying "the background, experience, and conduct of the accused," *Johnson,* 304 U.S. at 464, 58 S.Ct. 1019, in determining whether a signed waiver of one's Fifth or Sixth Amendment right to counsel for purposes of a polygraph test carries over to post-polygraph interrogation. Those circumstances include who requested the polygraph examination; who initiated the post-polygraph questioning; whether the signed waiver clearly specifies that it applies to post-polygraph questioning or only to the polygraph test; and whether the defendant has consulted with counsel. *See Wyrick v. Fields,* 459 U.S. 42, 47, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (per curiam); *United States v. Johnson,* 816 F.2d 918, 921 n. 4 (3d Cir.1987); *United States v. Gillyard,* 726 F.2d 1426, 1427–29 (9th Cir. 1984); *United States v. Eagle Elk,* 711 F.2d 80, 82 (8th Cir.1983).

After careful review, we cannot accept the district court's holding that León–Delfis waived his right to counsel for purposes of the post-polygraph questioning. The difficulty began when the district court applied the wrong legal standard. The district court stated that "the onus is not on the F.B.I. agent or the government agent" to avoid questioning. However, because León–Delfis' Sixth Amendment right to counsel had clearly attached, the government could not initiate questioning in the absence of counsel without potentially violating that right. *See Jackson,* 475 U.S. at 636, 106 S.Ct. 1404; *Moulton,* 474 U.S. at 170–71, 106 S.Ct. 477. Had León–Delfis initiated the post-polygraph discussion, we might reach a different outcome. But he did not. Both he and Agent López testified that the agents began the post-polygraph dialogue. The agents were required to respect León–Delfis' right to counsel by not questioning him in the absence of his attorney.

In addition, the evidence indicates that León–Delfis did not waive his right to counsel. León–Delfis was neither told that post-test questioning would occur nor signed a waiver that specifically mentioned the possibility of post-test questioning. Additionally, the FBI agents who questioned León–Delfis knew that he was actually represented by counsel; that he did not request the polygraph test but only consented to it after suggestion by the Assistant United States Attorney; and that Agent López initiated the post-polygraph conversation and questioning, not León–Delfis.

It is true, as the district court found, that León–Delfis was previously questioned by the FBI. However, the factual circumstances surrounding that questioning were entirely different than the post-polygraph questioning: the previous interrogations occurred while the FBI was first investigating this case, before León–Delfis' Fifth or Sixth Amendment rights to counsel attached. Additionally, there is no indication that León–Delfis was a "career

criminal" or that aside from these two previous, limited examinations he was intimately acquainted with the criminal justice system. In any case, that the FBI previously questioned León–Delfis does not alone outweigh other facts pointing to an unknowing and involuntary waiver for purposes of the post-polygraph questioning.

■ It is also true that León–Delfis signed two waivers of rights on the day of the interrogation. The district court relied upon these waivers in support of its holding that León–Delfis waived his right to counsel for post-polygraph questioning. However, the district court found that one waiver applied to pre-test questioning, and one to polygraph test questioning. It does not follow that León–Delfis waived his right to counsel for post-test questioning because he waived his right to pre-test and test questioning: waivers of rights are specific. *See United States v. Eaton*, 890 F.2d 511, 513 (1st Cir.1989) (right to counsel); *United States v. Allee*, 888 F.2d 208, 214 (1st Cir.1989) (per curiam) (right against self-incrimination); *United States v. Johnson*, 816 F.2d at 922 n. 4 (right to counsel). The waivers León–Delfis signed did not specifically mention the possibility of post-polygraph questioning, and Agent López failed to explain that post-polygraph questioning would occur. All these facts suggest exactly the opposite conclusion than that made by the district court: that León–Delfis' having signed two previous waivers did not mean he knowingly and intelligently waived his rights for post-polygraph questioning.

■ Looking at the totality of the circumstances and specifically focusing on the relevant inquiry articulated by courts referred to above, we hold that the district court erred in concluding that León–Delfis intelligently and knowingly waived his Sixth Amendment right to counsel for the post-test interrogation and that his confession was not admissible. Even so, we will not reverse a conviction because of trial error in admitting evidence obtained in violation of a defendant's Sixth Amendment right to counsel if the error was "harmless beyond a reasonable doubt." *Milton v. Wainwright*, 407 U.S. 371, 372, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). We recently stated:

> The ordinary test for harmless error is sometimes said to turn on whether it is "highly probable" that the improperly admitted evidence "contributed" to the conviction. But since any relevant evidence wrongly admitted probably was considered by the jury (and therefore "contributed" in a literal sense), a more useful formulation of the harmless error question is to ask whether the result would have been the same if the disputed evidence had not been admitted. We have therefore said that a conviction will be upheld if it is "highly probable" that the result would have been the same.

*United States v. Vigneau*, 187 F.3d 82, 86 (1st Cir.1999) (citations omitted). Additionally, "for certain errors that are constitutional in character, the error must be harmless beyond a reasonable doubt." *Id.* (internal quotation omitted). In this case, we cannot say, beyond a reasonable doubt, that it is highly probable that the jury would still have convicted León–Delfis in the absence of the incriminating evidence. Confessions are by nature highly probative and likely to be at the center of a jury's attention. Here, we have additional indications that the jury contemplated that evidence: it requested to hear the description of the confession again during its deliberations, and then convicted him. Therefore, we reverse his conviction and remand for a new trial at which the confession obtained after the polygraph test is suppressed. *See Jackson*, 475 U.S. at 628–29, 106 S.Ct. 1404 (affirming state court holding that evidence obtained in violation of defendant's Sixth Amendment right to counsel should have been suppressed at trial).

### III.

■ León–Delfis also argues that the district court should have given the jury a

multiple conspiracy defense instruction. Because we reverse León–Delfis' conviction, it is unnecessary to address this argument as to him. *See United States v. Gray*, 63 F.3d 57, 61 n. 3 (1st Cir.1995). In addition, Santiago–Sánchez did not raise this issue in the district court, but attempted to do so on appeal by a reference in his brief to León–Delfis' argument.

 Santiago–Sánchez's brief merely states that he "herein joins in the [multiple conspiracy defense instruction] issue presented to the Honorable Circuit Court ... by co-appellee Héctor León Delfis." He does not attempt to explain how this argument applies to him, and he fails to disclose that he neither proposed a multiple conspiracy defense instruction in the district court nor objected when one was not given. *See United States v. Portela*, 167 F.3d 687, 699 (1st Cir.1999) (reviewing failure to give jury instruction for plain error when defendant failed to object at trial); *United States v. Crochiere*, 129 F.3d 233, 237 (1st Cir.1997) (reviewing failure to give jury instruction for plain error when defendant neither proposed jury instruction nor objected at trial); *Senra v. Cunningham*, 9 F.3d 168, 171 (1st Cir.1993) (holding defendant waived objection to jury instruction when he failed to object at trial). León–Delfis objected to the district court's failure to include a multiple conspiracy instruction, but we typically require defendants in joint criminal trials to raise their own objections at trial. *See United States v. Palow*, 777 F.2d 52, 54 (1st Cir.1985) (defendant waived claim that trial should have been severed, regardless of fact that other defendants moved for severance, because he did not individually move for severance). This rule is relaxed only when the district court specifically states that an objection from one defendant will be considered an objection for all defendants. *See United States v. Alzanki*, 54 F.3d 994, 1005 n. 11 (1st Cir.1995); *United States v. Sepulveda*, 15 F.3d 1161, 1180 (1st Cir. 1993). Neither León–Delfis nor Santiago–Sánchez have informed us that the district court made such a statement in this case.

In *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990), we refused to consider Zannino's attempt to incorporate other appellants' arguments by reference because his attempt was perfunctory and failed to explain how those arguments specifically applied to him. That is the case here. For that reason, and also because Santiago–Sánchez failed to raise this argument in the trial court, we reject his effort to incorporate by reference, as we did in the similar case of *United States v. Saccoccia*, 58 F.3d 754, 790 (1st Cir.1995).

**IV.**

 Santiago–Sánchez also argues that the district court erred in allowing the government to introduce rebuttal evidence against him concerning money that was seized from him in a related civil in rem proceeding and subsequently disallowing him to introduce surrebuttal evidence on that subject. These errors, Santiago–Sánchez argues, violated his Sixth Amendment right to confrontation. We review the admission of rebuttal and surrebuttal evidence for abuse of discretion. *See Faigin v. Kelly*, 184 F.3d 67, 85 (1st Cir.1999) (rebuttal evidence); *Kines v. Butterworth*, 669 F.2d 6, 13 (1st Cir.1981) (surrebuttal evidence).

The government introduced in its case in chief a bank teller's testimony that Santiago–Sánchez made two bank deposits in 1996, one of $39,000 and the other of $20,-000, which allegedly related to money laundering charges against him. During Santiago–Sánchez's defense, his wife testified that their family's finances in 1996 were such that Santiago–Sánchez could have deposited the $59,000 from personal funds. On cross-examination, the government asked her about money that was seized from Santiago–Sánchez in a civil forfeiture in rem proceeding that predated, but stemmed from the same facts alleged in, the criminal trial. She said the amount seized was the family's entire savings, but

she was unsure exactly how much money was seized, although she did not think that it exceeded $200,000. When the government questioned her about the legitimate sources of the amount seized, the sum from sources she could explain came to $105,500. As rebuttal evidence, the government sought to introduce records from the in rem proceeding indicating that the amount seized was $203,000. This evidence, the government argued, served to impeach Santiago–Sánchez's wife's testimony and was circumstantial evidence of Santiago–Sánchez's wrongdoing. The defense sought an opportunity for surrebuttal to show that other persons claimed parts of the $203,000 in the in rem forfeiture proceeding. The district court admitted the rebuttal evidence but disallowed surrebuttal.

We first examine Santiago–Sánchez's argument that the rebuttal evidence should not have been admitted. He argues that the evidence was irrelevant pursuant to Federal Rules of Evidence 401 and 402. However, evidence of possession or control over substantial sums of money from unexplained sources is relevant in criminal cases involving money. *See, e.g., United States v. Ford,* 22 F.3d 374, 383 (1st Cir.1994); *United States v. Figueroa,* 976 F.2d 1446, 1454 (1st Cir.1992). Here, the government seized $203,000, the source of which Santiago–Sánchez's wife did not fully explain. Thus, the rebuttal evidence was relevant and admissible.

In the alternative, Santiago–Sánchez argues the evidence was more prejudicial than probative pursuant to Federal Rule of Evidence 403. "This is a difficult row to hoe: 'Only rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.'" *Saccoccia,* 58 F.3d at 773, *quoting Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1340 (1st Cir.1988). This is not one of those rare circumstances.

The government's conspiracy and money laundering charges against Santiago–Sánchez alleged that he was in possession of large sums of illegally secured money. That he can explain other sources for that money goes to the weight of that evidence, not admissibility. *See United States v. Newton,* 891 F.2d 944, 949 (1st Cir.1989), *citing United States v. Tramunti,* 513 F.2d 1087, 1105 (2d Cir.1975). Evidence of the forfeited money shows that Santiago–Sánchez possessed large amounts of money, the legitimate source of which was not fully explained. The district court was thus within its discretion to allow the rebuttal evidence.

Santiago–Sánchez also argues he should have been given an opportunity to provide surrebuttal evidence that would have shown that other individuals claimed part of the seized money. "A trial court has great discretion over the permissible scope of testimony in surrebuttal...." *United States v. Gaines,* 170 F.3d 72, 83 (1st Cir.1999). Surrebuttal is only allowed "'to explain away new facts brought forward by the proponent in rebuttal, or evidence to impeach a witness who testified in rebuttal.'" *Id., quoting F.W. Woolworth Co. v. Contemporary Arts,* 193 F.2d 162, 166–67 (1st Cir.1951). Ordinarily, surrebuttal is not allowed when it concerns issues raised prior to the opponent's rebuttal and the proffered evidence could have been introduced at that time. *See Gaines,* 170 F.3d at 83 (affirming district court's decision to disallow surrebuttal concerning an "issue ... raised prior to ... rebuttal" when party elected not to introduce evidence); *Kines,* 669 F.2d at 13–14 (holding, in collateral review of state court decision, that there was no error in rejecting surrebuttal that was cumulative and could have been introduced before state's rebuttal).

As indicated, the surrebuttal Santiago–Sánchez proffered dealt with claims other persons had to the money seized in the in rem proceeding. The district court was well within its discretion in not allowing it.

First, it concerned a subject that was at issue before the government introduced its rebuttal evidence: the legitimate source of the money seized in the in rem proceeding. After the government's cross-examination of Santiago–Sánchez's wife, in which she was questioned about the source of the money seized, the defense could have introduced evidence about any other claims to that money; however, it chose not to. *See Gaines,* 170 F.3d at 83 (disallowing surrebuttal on issue raised prior to rebuttal when party elected not to introduce evidence). Second, the surrebuttal was not proffered to impeach a rebuttal witness or explain away new facts raised during rebuttal. Santiago–Sánchez did not try to introduce evidence suggesting the amount seized was less than $203,000; thus, it was not offered for impeachment purposes. He also could not have explained away new facts raised in rebuttal, because Santiago–Sánchez's wife had already testified as to other persons' claims to the money in her direct examination. Further evidence on that subject would have been repetitive. For these reasons, the district court did not abuse its discretion in disallowing Santiago–Sánchez's proffered surrebuttal.

Santiago–Sánchez also argues, as he did before the district court, that the surrebuttal should have been allowed pursuant to "the rule of completeness which underlies" Federal Rule of Evidence 106. That rule states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Whether Rule 106 provides an independent ground for admitting evidence at trial is an open question in this circuit. *See United States v. Boylan,* 898 F.2d 230, 257 n. 16 (1st Cir.1990). In order for us to accept Santiago–Sánchez's Rule 106 argument, we would have to answer this open question. However, Santiago–Sánchez has not fully briefed this issue or given us any reason to

hold that Rule 106 furnishes an independent ground to admit evidence in this case. We leave the resolution of that question to another day after it has been properly raised and fully briefed.

## V.

 Santiago–Sánchez also argues that the district court erred in sentencing him to pay restitution because the government already seized a larger amount of money from him in the civil forfeiture in rem action. He argues that restitution in this criminal action, in addition to forfeiture in rem in a civil action, raises potential double jeopardy problems and is unfair. We review restitution sentencing orders for abuse of discretion; related findings of fact are upheld unless clearly erroneous, and legal questions involved in the order are reviewed de novo. *See United States v. Vaknin,* 112 F.3d 579, 586 (1st Cir.1997).

There is no potential double jeopardy problem in this case. The Supreme Court has consistently concluded that the Double Jeopardy Clause "does not apply to [civil forfeitures] because they do not impose punishment." *United States v. Ursery,* 518 U.S. 267, 274, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). As we recently stated: "A completed civil forfeiture of property does not constitute 'jeopardy' under the Double Jeopardy Clause, and does not bar the subsequent criminal prosecution and punishment of the defendant whose property was forfeited." *United States v. Candelaria–Silva,* 166 F.3d 19, 43 (1st Cir. 1999); *see also United States v. One Parcel of Real Property with Bldgs., Appurtenances, and Improvements, Known as 154 Manley Road, Located in Burrillville, R.I.,* 91 F.3d 1 (1st Cir.1996) (per curiam) (following *Ursery* ).

 Santiago–Sánchez also argues that restitution in this case is unfair (1) because he "lacks any degree of control over the assets from which the restitution is to proceed" inasmuch as the government, in

the civil in rem case, seized the embezzled money; and (2) the civil in rem case began first and has been stayed only to protect his constitutional rights in the criminal case. Significantly, Santiago–Sánchez does not contest that federal statutes authorize restitution in this case; he merely argues that restitution is unfair. However, the language of the sentencing guidelines and related statutes regarding restitution is plain and allows the district court no discretion. The applicable sentencing guideline clearly states: "The court *shall* ... enter a restitution order if such order is authorized under 18 U.S.C. §§ 3663–3664...." U.S.S.G. § 5E1.1(a)(1) (emphasis added). Section 3664 likewise states that "the court *shall* order restitution to each victim in the full amount of each victim's losses as determined by the court *and without consideration of the economic circumstances of the defendant.*" 18 U.S.C. §§ 3664(f)(1)(A) (emphasis added). These provisions show that the Sentencing Commission and Congress were more concerned about the inherent fairness of making crime victims whole than fairness to defendants who were found guilty of financial crimes. *Cf. United States v. Porter,* 90 F.3d 64, 70 (2d Cir.1996) ("Congress has decided to protect the interests of victims of crime.").

■ Of course, restitution may not be ordered if "full restitution has been made" or if "the complication and prolongation of the sentencing process resulting from the fashioning of a restitution requirement outweighs the need to provide restitution to any victims through the criminal process." U.S.S.G. § 5E1.1(b). To the extent Santiago–Sánchez implies that the first of these situations applies because the government has seized money in the civil in rem proceeding, he is incorrect. Seizure of money in a civil in rem proceeding does not constitute restitution. Full restitution has not been made in the civil case because that case has not been completed, a final judgment issued, and the money restored to the proper owner. In other words, even

though money that *might* belong to the government has been seized from Santiago–Sánchez, the final adjudication of whether that money *in fact* belongs to the government or to Santiago–Sánchez has not been made, and money properly belonging to the government has not been released to it. Thus, Santiago–Sánchez has not yet made the government whole. Thus, the district court did not abuse its discretion in ordering restitution.

**AFFIRMED** as to Santiago–Sánchez; **REVERSED AND REMANDED** as to León–Delfis.