OPINION
{¶ 1} Defendant-appellant, Kenneth Menke, appeals his conviction in the Butler County Court of Common Pleas, Juvenile Division, for sexual imposition. We affirm the decision of the trial court.
 {¶ 2} On June 3, 2001, appellant was in a neighbor's hot tub with his daughter, Tara, and two of her female friends, H. and L. Appellant's daughter and H. are both 18 years old. Her friend, L., is 16 years old. Appellant is 54 years old. Appellant has known L. for many years.
 {¶ 3} Once in the hot tub, appellant questioned the girls about massages. All agreed to give each other massages in the hot tub. Tara massaged H.'s feet. Appellant massaged L.'s feet while she massaged his feet. Appellant progressed from massaging L.'s feet to massaging her calves and upper thighs.
 {¶ 4} Tara and H. left the hot tub to get food and use the restroom. At that time, L. had her back to appellant and he began to massage her shoulders. Appellant testified that he was massaging L.'s shoulders, her pectoral muscles, and underneath her arms. L. testified that appellant then whispered to her that he had an erection as a result of massaging her. L. testified that appellant then groped her breasts with his full hand. L. testified that she became uncomfortable and asked appellant to stop. At that point the other girls returned and L. exited the hot tub. Shortly thereafter, L. left with the other girls and went home. At home, L. cried and told her sister what had happened. L. then told her parents.
 {¶ 5} On July 20, 2001, appellant agreed to take a polygraph examination administered by the Butler County Sheriff's Office. Appellant's Miranda rights were read and explained to him. Appellant then signed a waiver of his Miranda rights. Appellant also signed a release form stating that he was voluntarily at the sheriff's office and that he consented to the polygraph examination.
 {¶ 6} The polygraph administrator began to interview appellant for the polygraph pre-test, which is standard procedure. During the interview, appellant admitted to inadvertently touching L.'s breasts and also to having an erection while doing so. At this point, the administrator activated a recording device, made appellant aware of the recording device, and asked him to discuss his prior statements. The administrator decided not to administer the polygraph examination because a confession was obtained and the polygraph was unnecessary.
 {¶ 7} A complaint was filed charging appellant with one count of sexual imposition in violation of R.C. 2907.06(A)(1). The trial court denied appellant's motion to suppress the statements he made to police. Following a bench trial, appellant was found guilty as charged. The trial court imposed a sentence of 60 days in the Butler County jail, three years of probation, and required appellant to participate in sex offender therapy. Appellant appeals the decision raising two assignments of error.
Assignment of Error No. 1
 {¶ 8} "The Trial Court Erred In Denying Defendant-Appellant's Motion To Suppress The Statements He Made To Police."
 {¶ 9} Appellant argues that when he agreed to take the polygraph examination and waived his Miranda rights, he did so pursuant to the agreement that the police give him a polygraph examination. Appellant argues that when the police then failed "to give the promised polygraph examination, neither [his] waiver of rights nor his statements are voluntary, and the statements must therefore be suppressed."
 {¶ 10} Once the admissibility of a confession is challenged, the prosecution must prove, by a preponderance of the evidence, that the confession was, in fact, voluntarily given. See Lego v. Twomey (1972),404 U.S. 477, 489, 92 S.Ct. 619; State v. Melchior (1978),56 Ohio St.2d 15, 25. A statement is voluntary if it is "the product of an essentially free and unconstrained choice by its maker ***." State v.Wiles (1991), 59 Ohio St.3d 71, 81, quoting Culombe v. Connecticut
(1961), 367 U.S. 568, 602, 81 S.Ct. 1860. A confession is involuntary "if it is the product of `coercive police activity.'" State v. Loza,71 Ohio St.3d 61, 66, 1994-Ohio-409, quoting Colorado v. Connelly
(1986), 479 U.S. 157, 167, 107 S.Ct. 515. In determining whether a confession is voluntary or involuntary, a court should consider "the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976),49 Ohio St.2d 31, paragraph two of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147; State v. Barker (1978),53 Ohio St.2d 135, paragraph two of the syllabus.
 {¶ 11} Prior to administration of the polygraph examination, Detective Frank J. Smith of the Butler County Sheriff's Office read appellant his Miranda rights. Appellant signed a Miranda waiver stating he understood those rights as read to him. The waiver states, "I have been advised of all my rights contained on this card, and I understand all of them and I wish to talk to you without having a lawyer present." Furthermore, appellant signed the "Butler County Sheriff's Office Polygraph Unit Release Form," which states, "I further agree and understand that this examination and any part of the pre-test interview or post-test interview may be recorded by the use of video cameras, and that any recordings made can be used in a court of law."
 {¶ 12} Det. Smith testified that the pre-test interview is used "in reference to preparing the individual for the polygraph test to see if the examiner believes that he is capable of taking the polygraph test." Det. Smith testified that the pre-test is necessary "to formulate questions" to be asked during the polygraph examination. During the pre-test interview, Det. Smith asked appellant, "how old is L.?" Appellant replied, "I think 15, 16." Det. Smith also asked, "[s]o you were massaging her feet and it moved to the legs and to the upper — to the thigh area, am I correct?" Appellant responded, "[r]ight." Det. Smith asked, "do you think that you might have inadvertently touched the girl's breasts?" Appellant replied, "I may have." Det. Smith also asked, "did you make mention to her that you were aroused or you were hard?" Appellant answered, "[y]eah, that's when I said, do you know what you're doing, I said, you know --." Det. Smith testified that he did not administer the polygraph examination at that point because appellant "admitted touching the young lady, the victim. There was no point in going forth with the polygraph examination."
 {¶ 13} Appellant argues that confessions made in similar situations have been held to be involuntary. Appellant cites Henery v.Dees (C.A.5, 1981), 658 F.2d 406, where the defendant agreed to waive his rights "during the polygraph examination." However, the confession inHenery was found involuntary because the polygraph administrator breached the agreement. The polygraph was administered, then the administrator told Henery that he failed the test and questioned him after the polygraph examination without counsel. There was no such exchange between appellant and Det. Smith since a polygraph examination was never administered. Furthermore, appellant's confession was made during the polygraph pre-test which was covered by appellant's waiver. Appellant also cites United States v. Leon-Delfis (C.A.1, 2000), 203 F.3d 103, where the court deemed a confession during a post-polygraph interview was involuntary because the waiver did not extend to a post-polygraph interview. However, appellant's confession was during the pre-test and the waiver specifically includes the pre-test interview.
 {¶ 14} Det. Smith testified that the duration of the polygraph interview lasted "about an hour and ten minutes total from the time of him actually arriving in my office until the conclusion." Appellant is 54 years of age. He has been self-employed with a printing company for ten years. Appellant has no prior criminal experience. Det. Smith asked appellant at the conclusion of the polygraph pre-test interview, "[h]ave I treated you good [sic] since you've been here?" Appellant answered, "[y]es, sir." Therefore, we find no evidence of the existence of physical deprivation or mistreatment or the existence of threat or inducement on behalf of the sheriff's office.
 {¶ 15} Even if the administration of the polygraph examination was an investigative technique designed to elicit an incriminating response from appellant, when he decided to voluntarily take this test, after being informed that anything he said could be used against him, he proceeded at his own peril. The right to decide not to speak would indeed be hollow if one were forbidden the opportunity to choose to speak. Furthermore, any statement given "freely and voluntarily without any compelling influences is, of course admissible in evidence." State v.Tucker, 81 Ohio St.3d 431, 436, 1998-Ohio-438.
 {¶ 16} Based upon the totality of the circumstances, we hold that appellant's statements were voluntary. Appellant was given appropriate constitutional warnings, but chose nonetheless to state his version of events surrounding the hot tub massages. Therefore, the motion to suppress his statements was properly denied. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 17} "The Trial Court Erred In Finding The Defendant Guilty."
 {¶ 18} Appellant argues that the guilty finding was against the manifest weight of the evidence. Appellant also argues that the evidence was insufficient to meet the "other evidence" or corroboration requirement of R.C. 2907.06(B).
 {¶ 19} To determine if a conviction is against the manifest weight of the evidence, an appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. An appellate court should vacate a conviction and grant a new trial only when the evidence weighs strongly against the conviction. Id. In addition, the reviewing court must be aware that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given to the evidence presented. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus; State v. Stair, Warren App. No. CA2001-03-017, 2002-Ohio-18.
 {¶ 20} Appellant was convicted of sexual imposition in violation of R.C. 2907.06(A)(1) which provides:
 {¶ 21} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 22} "(1) The offender knows that the sexual contact is offensive to the other person, *** or is reckless.
 {¶ 23} "***
 {¶ 24} "(B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence."
 {¶ 25} We first address appellant's corroboration argument. InState v. Economo, 76 Ohio St.3d 56, 58, 1996-Ohio-426, the Ohio Supreme Court determined the type of evidence that satisfies the corroboration requirement of R.C. 2907.06(B). The court held that the corroboration requirement "does not mandate proof of the facts which are the very substance of the crime charged." Id. at 59-60. Further, the court found that the corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Id. at 60. Slight circumstances or evidence that tends to support the victim's testimony is satisfactory. Id. at 60. Corroborating evidence is not an element of the offense of sexual imposition, but merely is an ancillary evidential requirement. Id. at 60-62.
 {¶ 26} L. testified that Tara invited her for a hot tub outing. L. testified that appellant was in the hot tub when she arrived. She testified that while she was in the hot tub, appellant massaged her feet, calves and thighs. He then began massaging her back and "it slowly began to move from the sides over the breast area." L. described the breast touching as "full hand, groping." L. testified that she asked appellant to stop. However, L. testified that appellant told her she was "a real cool kid" and continued touching her. L. testified that appellant then "pulled me *** to his mouth and he told me about what trouble he could get in." L. testified that appellant then told her that he was "aroused."
 {¶ 27} In this case, we find substantial and credible evidence that supports L.'s testimony. The testimony of H. corroborated L.'s testimony. H. testified that Tara invited her on the hot tub outing. H. testified that she observed appellant massaging L.'s feet, shoulders, and back while in the hot tub. Tara's testimony also corroborated L.'s testimony. Tara testified that they were all in the hot tub and she observed appellant massaging L.'s feet, shoulders, and back. Furthermore, appellant's testimony also corroborated L.'s testimony. Appellant admitted to inadvertently touching L.'s breasts. Notwithstanding the breast touching, appellant also admitted to touching L.'s feet, back, pectoral muscles, calves and thighs. Appellant also admitted to having an erection as a result of touching her.
 {¶ 28} Based on the standard set forth in Economo, we find that the testimony of H., Tara, and appellant supports L.'s testimony and is sufficient to meet the corroboration requirement of R.C. 2907.06(B).
 {¶ 29} We now address appellant's argument that the state failed to prove "sexual contact" or "reckless contact" between himself and L. Appellant bases this claim on his testimony that he did not touch L.'s breasts, and that even if "some incidental touching did occur, it does not fall within the scope of the sexual imposition statute."
 {¶ 30} In making a determination as to the sexual imposition statute, the trier of fact may infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with areas of the body described in R.C. 2907.01(B). Statev. Cobb (1991), 81 Ohio App.3d 179, 185. Sexual contact is defined in R.C. 2907.01(B) as the "touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." In making a decision as to sexual gratification, "the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant." Cobb at 185.
 {¶ 31} In this case, L. testified that appellant massaged her feet, calves and thighs before he began massaging her back. While massaging her back, L. testified he moved "from the sides over the breast area." L. described the breast touching as "full hand, groping." L. testified that she asked appellant to stop. However, L. testified that appellant continued touching her and told her that she was "a real cool kid," stated "what trouble he could get in," and told her that he was "aroused." Additionally, appellant admitted he may have inadvertently touched L.'s breasts. Appellant also admitted to massaging L.'s feet, back, pectoral muscles, and thighs, and to having an erection as a result of touching her.
 {¶ 32} We find that it was reasonable for the jury to infer from this testimony that appellant's purpose in placing his hand on L.'s person was for sexual gratification. The fact that when this incident occurred appellant was 54 years old while L. was 16 years old, along with the nature of appellant's testimony regarding his erection, and L.'s testimony that appellant was touching her in an erogenous zone specifically defined in R.C. 2907.01(B) establishes that there is ample evidence that appellant's actions were within the scope of the sexual imposition statute.
 {¶ 33} Based on the evidence presented by the state, a rational trier of fact could have found that appellant had sexual contact with the victim and knew that the contact was offensive to the victim. Additionally, the corroboration requirement of R.C. 2907.06(B) was satisfied because the victim's testimony was corroborated by the testimony of H., Tara, and appellant. Therefore, we reject appellant's argument that there was insufficient evidence to support his conviction.
 {¶ 34} We find that a rational trier of fact could have found appellant guilty of the offense of sexual imposition under R.C.2907.06(A)(1). Accordingly, the second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.